**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| 3910 Enterprises, Inc., | Case No. 25-80362 (ARP) |
| Debtor. | |

**3910 ENTERPRISES, INC.'S COMBINED DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Genevieve M. Graham
Genevieve Graham Law, PLLC
dba Graham PLLC
State Bar No. 24085340
4203 Montrose Blvd., Suite 550
Houston, Texas 77006
(832) 367.5705
ggraham@graham-pllc.com

*Counsel for Debtor*

# **TABLE OF CONTENTS**

SECTION I. INTRODUCTION ....................................................................... 1

a.  Am I eligible to vote to accept or reject the Plan? ................................... 1

b.  What will I receive if my Claim is Disputed? ......................................... 1

c.  What happens if the Plan isn't confirmed or doesn't become effective? .............. 1

SECTION II. SUMMARY OF CLASSIFICATION AND TREATMENT OF  CLAIMS AND INTERESTS UNDER PLAN AND IMPORTANT  SOLICITATION AND CONFIRMATION DATES AND DEADLINES ................................................. 2

   A.  Summary of Classification and Treatment of Claims and Interests. ................... 2

SECTION III. DEFINED TERMS ................................................................. 11

SECTION IV. THE CHAPTER 11 CASE ........................................................... 18

SECTION V. CONFIRMATION AND VOTING PROCEDURES ............................................. 19

   A.  Confirmation Hearing. ............................................................ 19

   B.  Procedures for Objections. ....................................................... 19

   C.  Requirements for Confirmation. ................................................... 19

   D.  Classification of Claims and Interests. .......................................... 20

   E.  Impaired Claims or Interests. .................................................... 22

   F.  Confirmation without Necessary Acceptances; Cramdown. ............................. 22

   G.  Feasibility. ..................................................................... 23

   H.  Best Interests Test and Liquidation Analysis. .................................... 24

   I.  Eligibility to Vote on the Combined Plan and Disclosure Statement. ................ 24

   J.  Solicitation Package / Release Opt-Out. .......................................... 25

   K.  Voting Procedures, Voting Deadline, and Applicable Deadlines. ..................... 25

   L.  Acceptance of the Combined Plan and Disclosure Statement. ......................... 25

SECTION VI. CERTAIN RISK FACTORS, TAX CONSEQUENCES, AND OTHER DISCLOSURES ................................................................. 26

   A.  Certain Risk Factors to be Considered. ........................................... 26

   B.  The Combined Plan and Disclosure Statement May Not Be Accepted. ................... 26

   C.  The Combined Plan and Disclosure Statement May Not Be Confirmed. .................. 26

   D.  Distributions to Holders of Allowed Claims Under the Combined Plan and Disclosure Statement May be Inconsistent with Projections. ......................... 27

   E.  Objections to Classification of Claims. .......................................... 27

   F.  Failure to Consummate the Combined Plan and Disclosure Statement. ................. 28

   G.  The Releases May Not Be Approved. ................................................ 28

H. Reductions to Estimated Creditor Recoveries. ........................................ 28

I. Tax Consequences for U.S. Holders of Certain Claims. ..................................... 28

J. Releases and Injunctions. ...................................................................... 29

K. Alternatives to the Combined Plan and Disclosure Statement. ........................... 29

SECTION VII. UNCLASSIFIED CLAIMS.................................................................. 30

A. Unclassified Claims. ............................................................................... 30

B. Administrative Claims. ............................................................................ 30

C. Priority Tax Claims. ............................................................................... 31

SECTION VIII. CLASSIFICATION OF CLAIMS AND INTERESTS ........................ 31

A. Summary of Classification. ...................................................................... 31

B. Special Provision Governing Unimpaired Claims. ......................................... 32

SECTION IX. TREATMENT OF CLAIMS AND INTERESTS ................................. 32

A. Class 1—Other Secured Claims. ............................................................... 32

B. Class 2—Other Priority Claims. ............................................................... 32

C. Class 3—Secured Ad Valorem Tax Claims. ................................................. 33

D. Class 4A—Pacific Asset Holding LLC. ...................................................... 33

E. Class 4B—Wilmington Savings Fund Society, FSB, as Owner Trustee of the
Residential Credit Opportunities Trust IX-B. ............................................... 34

F. Class 4C—1Sharpe Income Solutions Trust. ................................................ 34

G. Class 4D—Pinnacle Mortgage. ................................................................. 34

H. Class 4E—Jet Lending LLC..................................................................... 35

I. Class 4F— Metropolitan Life Insurance Company.......................................... 35

J. Class 5—General Unsecured Claims. ......................................................... 35

K. Class 6—Interests. ................................................................................. 36

SECTION X. DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS................. 36

A. Distribution Dates................................................................................... 36

B. Subsequent Distributions.......................................................................... 36

C. Distribution Record Date.......................................................................... 36

D. Time Bar to Cash Payments by Check. ....................................................... 37

E. Tax Identification Numbers....................................................................... 37

F. Claims Paid or Payable by Third Parties. .................................................... 37

a. Claims Paid by Third Parties .................................................................... 37

b. Claims Payable by Third Parties ............................................................... 38

SECTION XI. PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND
REDISTRIBUTIONS ............................................................................................ 38

A.    No Distributions Pending Allowance. .................................................................. 38

B.    Resolution of Disputed Claims. ........................................................................... 38

C.    Estimation of Claims. .......................................................................................... 39

D.    *De minimis* Distributions, Rounding. .................................................................. 39

E.    Unclaimed and Undeliverable Distributions. ...................................................... 39

SECTION XII. TREATMENT OF EXECUTORY CONTRACTS  AND UNEXPIRED
LEASES ....................................................................................................................... 40

A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ....... 40

B.    Rejection Claims. ................................................................................................. 40

C.    Insurance Policies. ............................................................................................... 41

SECTION XIII. MEANS FOR IMPLEMENTATION OF THE PLAN ......................... 41

A.    Sources of Consideration for Plan Distributions. ................................................ 41

B.    Sale of Real Property. .......................................................................................... 41

C.    Mortgage Payoffs. ............................................................................................... 41

D.    Corporate Action by Debtor. ............................................................................... 41

E.    Preservation of Causes of Action. ....................................................................... 42

SECTION XIV. EFFECT OF CONFIRMATION ......................................................... 42

A.    Binding Effect of the Plan. .................................................................................. 42

B.    Discharge of Claims and Termination of Interests. ............................................. 42

C.    Property Free and Clear. ...................................................................................... 43

D.    Guarantees and Joint Obligations. ....................................................................... 43

E.    Gatekeeper Provision. .......................................................................................... 44

SECTION XV. SETTLEMENT, RELEASE, AND INJUNCTION ............................... 44

A.    Compromise and Settlement of Claims, Interests, and Controversies. ............... 44

B.    Release. ................................................................................................................ 44

C.    Injunction. ............................................................................................................ 45

SECTION XVI. CONDITIONS PRECEDENT TO EFFECTIVE DATE ...................... 46

A.    Conditions to the Effective Date. ........................................................................ 46

B.    Waiver of Conditions Precedent. ......................................................................... 46

SECTION XVII. RETENTION OF JURISDICTION ................................................... 46

SECTION XVIII. MISCELLANEOUS PROVISIONS ................................................. 47

A.    Payment of Statutory Fees / Closing of Chapter 11 Case. .................................. 47

B.    Withdrawal of Plan. ............................................................................................. 48

C.    Severability of Plan Provisions. .......................................................................... 48

D.    Exhibits. ............................................................................................................... 48

E.      Notices. .................................................................................................................. 48

F.      Reservation of Rights. ........................................................................................... 48

G.      Defects, Omissions and Amendments. .................................................................. 49

H.      Filing of Additional Documents. ........................................................................... 49

I.      Successors and Assigns. ......................................................................................... 49

J.      Setoffs and Recoupments. ...................................................................................... 49

K.      Implementation. ..................................................................................................... 50

L.      Record Date. ........................................................................................................... 50

M.      Substantial Consummation. ................................................................................... 50

N.      Waiver of Fourteen-Day Stay. ............................................................................... 50

O.      Governing Law. ...................................................................................................... 50

P.      Entire Agreement. .................................................................................................. 50

SECTION XIX. RECOMMENDATION ...................................................................... 50

## DISCLAIMERS

EACH HOLDER OF A CLAIM AGAINST THE DEBTOR ENTITLED TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT IN ITS ENTIRETY BEFORE VOTING.  NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT MAY BE MADE EXCEPT PURSUANT TO THE TERMS HEREOF AND SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE.  IF YOU ARE ENTITLED TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE RECEIVING A BALLOT WITH YOUR NOTICE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.  THE DEBTOR URGES YOU TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT.

THE COMBINED PLAN AND DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3016 AND 3017, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST OR INTERESTS IN THE DEBTOR SHOULD EVALUATE THE COMBINED PLAN AND DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED. THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT AS TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR.  YOU SHOULD CONSULT YOUR PERSONAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES, OR OTHER LEGAL CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.

THE COMBINED PLAN AND DISCLOSURE STATEMENT CONTAIN SUMMARIES OF CERTAIN STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, ANTICIPATED EVENTS IN THE CHAPTER 11 CASE, AND FINANCIAL INFORMATION. ALTHOUGH THE DEBTOR BELIEVES THAT THE STATEMENTS AND DESCRIPTIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE TRUE AND ACCURATE, THEY ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTORY PROVISIONS. THE TERMS OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTES GOVERN IN THE EVENT OF ANY DISCREPANCY WITH THE COMBINED PLAN AND DISCLOSURE STATEMENT. CREDITORS AND OTHER INTERESTED PARTIES SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, AND THE APPLICABLE

**STATUTES THEMSELVES FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.**

**THE FACTUAL STATEMENTS AND REPRESENTATIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE MADE BY THE DEBTOR AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED, AND THE DEBTOR DISCLAIMS ANY OBLIGATION TO UPDATE ANY SUCH STATEMENTS AFTER THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT.  THE DELIVERY OF THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.**

**IN CONNECTION WITH THE DEBTOR'S SOLICITATION OF ACCEPTANCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT PURSUANT TO SECTION 1126(b) OF THE BANKRUPTCY CODE, THE DEBTOR IS FURNISHING A SOLICITATION PACKAGE, CONSISTING OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE EXHIBITS HERETO, CONFIRMATION NOTICE, AND A BALLOT, AS APPLICABLE, TO EACH RECORD HOLDER OF CLAIMS ELIGIBLE TO VOTE OR ITS COUNSEL. THE COMBINED PLAN AND DISCLOSURE STATEMENT IS TO BE USED BY EACH SUCH ELIGIBLE HOLDER SOLELY IN CONNECTION WITH ITS EVALUATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT; USE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT FOR ANY OTHER PURPOSE IS NOT AUTHORIZED.  NOTHING STATED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY.  THE COMBINED PLAN AND DISCLOSURE STATEMENT MAY NOT BE REPRODUCED OR PROVIDED TO ANYONE OTHER THAN ADVISORS TO THE RECIPIENT WITHOUT THE PRIOR WRITTEN CONSENT OF THE DEBTOR.**

# SECTION I.
## INTRODUCTION

3910 Enterprises, Inc. (the "Debtor") hereby proposes the following combined disclosure statement and plan of reorganization pursuant to sections 1121(a) and 1125(b) of title 11 of the United States Code (the disclosure statement portion hereof, the "Disclosure Statement" and the chapter 11 plan portion hereof, the "Plan," as may be modified or amended from time to time, and collectively, the "Combined Plan and Disclosure Statement").  Capitalized terms used in the Combined Plan and Disclosure Statement and not otherwise defined have the meanings ascribed to such terms in Section 3.

### a.   Am I eligible to vote to accept or reject the Plan?

You are entitled to vote to accept or reject the Plan only if you hold an Allowed Claim (or a Claim that has been temporarily allowed for voting purposes) that is impaired.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not eligible to vote with respect to the Plan as a holder of such Claim. The administrative claims of the Debtor are not classified in this Plan.

### b.   What will I receive if my Claim is Disputed?

No distributions will be made on account of any Claim that is a Disputed Claim unless and until that Claim becomes an Allowed Claim in accordance with the procedures for resolving Disputed Claims set forth in the Plan.

### c.   What happens if the Plan isn't confirmed or doesn't become effective?

The Debtor expects that all of the conditions to Confirmation and effectiveness of the Plan will be satisfied. There is no guaranty, however, that the Plan will become effective. Although the Debtor intends to take all acts reasonably necessary to satisfy the conditions to the Confirmation and effectiveness of the Plan that are within the Debtor's control, if, for any reason, the Plan is not confirmed or does not become effective, the Debtor may be forced to propose an alternative plan or plans of reorganization under Chapter 11 of the Bankruptcy Code. If no plan can be confirmed, the Debtor may have to convert to a liquidation case under chapter 7 of the Bankruptcy Code

The Debtor submits that the Combined Plan and Disclosure Statement or notice thereof will be distributed to all holders of Claims and Interests in accordance with section 1125(b) of the Bankruptcy Code; Rules 2002, 3016, and 3017 of the Federal Rules of Bankruptcy Procedure; and the Court's order conditionally approving the Combined Plan and Disclosure Statement [Docket No. ●].  The Combined Plan and Disclosure Statement and the exhibits hereto include a discussion of:  (i) the nature and history of the Debtor's business and liabilities; (ii) events during the Chapter 11 Case; (iii) the requirements for confirmation of the Plan and procedures for voting to accept or reject the Plan; (iv) additional factors and disclosures to be considered, including risk factors and certain U.S. federal income tax consequences of the Plan; and (v) the terms of the Plan, including the treatment of holders of Claims and Interests under the Plan.  The Disclosure Statement was prepared with the intent to provide "adequate information" (as defined in the Bankruptcy Code) to

enable holders of Claims against and Interests in the Debtor to make informed judgments about the Plan.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, if any, the Debtor expressly reserves the right to alter, amend, or modify the Combined Plan and Disclosure Statement, and any related documents, one or more times, before substantial consummation thereof. The Debtor may also withdraw this Combined Plan and Disclosure Statement at any time prior to confirmation.

**SECTION II.**
**SUMMARY OF CLASSIFICATION AND TREATMENT OF**
**CLAIMS AND INTERESTS UNDER PLAN AND IMPORTANT**
**<u>SOLICITATION AND CONFIRMATION DATES AND DEADLINES</u>**

**A.** **<u>Summary of Classification and Treatment of Claims and Interests.</u>**

All Claims against or Interests in the Debtor, other than Administrative Claims, are classified for purposes of voting and distributions under the Combined Plan and Disclosure Statement.  A summary of the classification of these Claims and Interests, the proposed treatment of each Class of Claims or Interests, and the voting status of each Class of Claims or Interests follows.

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| **Unclassified**: Administrative Claims, estimated Allowed Administrative Claims total approx. $80,000<br><br>**Estimated Recovery: 100%** | Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim, shall receive from Available Cash payable by the Debtor or Reorganized Debtor, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtor or Reorganized Debtor, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtor's business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtor's business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law. | N/A (Not Classified) | N/A (Not Classified) |
| Class 1: Other Secured Claims, estimated to total approx. $0<br><br>**Estimated Recovery: 100%** | The Reorganized Debtor shall pay the Allowed amount of each Other Secured Claim to each Entity holding an Other Secured Claim as soon as practicable following the later of: (a) the Effective Date and (b) the date such Other Secured Claim becomes an Allowed Claim (or as otherwise permitted by law). The Debtor or Reorganized Debtor shall pay each Entity holding an Other Secured Claim in Cash in full in respect of such Allowed Claim from the Petition Date; *provided however*, that such Entity may be treated on such less favorable terms as may be agreed to by such Entity. | Unimpaired | No |

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| Class 2: Other Priority Claims, estimated to total approx. $0<br><br>**Estimated Recovery: 100%** | The Reorganized Debtor shall pay the Allowed amount of each Other Priority Claim to each Entity holding an Other Priority Claim as soon as practicable following the later of: (a) the Effective Date and (b) the date Other Priority Claim becomes an Allowed Claim (or as otherwise permitted by law). The Debtor or Reorganized Debtor shall pay each Entity holding an Other Priority Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; *provided however*, that such Entity may be treated on such less favorable terms as may be agreed to by such Entity | Unimpaired | No |
| Class 3: Government Entity Secured Ad Valorem Tax Claims, estimated to total approx. $85,000<br><br>**Estimated Recovery: 100%** | The Reorganized Debtor shall pay the Allowed amount of each Secured Ad Valorem Tax Claim to each Entity holding a Secured Ad Valorem Tax either i) in full from Cash proceeds from the sale of Real Property Assets, to which such Entity's Lien attaches; (ii) monthly, over a period of 60 months at 12% interest, beginning, not later than, the first full month after the Sale Period; or (iii) or on any terms as may be agreed to by such Entity. | Impaired | Yes |

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| Class 4A: Pacific Asset Holding LLC (Fay Servicing)<br><br>Mortgage lien asserted against 1002 Sealy, Galveston, TX 77550, estimated payoff to total $0-$275,000.00 | Subject to Section XIII.Sale of Real Property.<br>Pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1146(a), during the Sale Period the Reorganized Debtor will continue to market the Listed Real Property in order to consummate the sale of the Listed Real Property. Additionally, at any time after the Effective Date but prior to the closing of this Chapter 11 Case, the Reorganized Debtor may market and sell any of the Real Property Assets. The Reorganized Debtor will distribute Cash proceeds from the sale of any of the Real Property Assets (including the Listed Real Property) pursuant to the Plan. Prior to distribution of Cash proceeds from any sale of the Debtor's Real Property, the Reorganized Debtor is authorized to first pay reasonable and customary broker / agent fees.<br>Mortgage Payoffs., unless otherwise agreed to by a Holder of an Allowed Class 4A Claim, the Reorganized Debtor shall pay the Allowed amount of the Class 4A Claim i) in full from Cash proceeds from the sale of Real Property Assets, to which such Entity's Lien attaches; or (ii) beginning on the first day of the full month following the expiration of the Sale Period, the Reorganized Debtor shall make interest-only payments at the rate of 5.5% per annum to the Entity holding an Allowed Class 4A Claim for a period of 36 months.<br><br>In month 37, the Claim shall reamortize for a 30-year period, at an interest rate of the Prime Rate + 2%, to be paid monthly, with a final balloon payment due at the end of year 7 of the 30-year term for the remaining balance owed under the Claim. | Impaired | Yes |

5

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| Class 4B: Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust IX-B<br><br>Mortgage lien asserted against:<br><br>5011 Ave N 1/2, Galveston, TX 77551<br><br>5902 Avenue S 1/2, Galveston, TX 77551<br><br>1719 50th Street, Galveston, TX 77551<br><br>5003 Avenue O 1/2, Galveston, TX 77551<br><br>1224 Avenue L, Galveston, TX 77550<br><br>1007 Ball Street, Galveston, TX 77550<br><br>1728 69th Street, Galveston, TX 77551<br><br>913 21st/Moody, Galveston, TX 77550<br><br>915 21st/Moody, Galveston, TX 77550<br><br>206 Biscayne Blvd, El Lago, TX 77586<br><br>Estimated payoff to total: $2,200,000.00 | Subject to Section XIII.Sale of Real Property.<br>Pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1146(a), during the Sale Period the Reorganized Debtor will continue to market the Listed Real Property in order to consummate the sale of the Listed Real Property. Additionally, at any time after the Effective Date but prior to the closing of this Chapter 11 Case, the Reorganized Debtor may market and sell any of the Real Property Assets. The Reorganized Debtor will distribute Cash proceeds from the sale of any of the Real Property Assets (including the Listed Real Property) pursuant to the Plan. Prior to distribution of Cash proceeds from any sale of the Debtor's Real Property, the Reorganized Debtor is authorized to first pay reasonable and customary broker / agent fees.<br>Mortgage Payoffs., unless otherwise agreed to by a Holder of an Allowed Class 4B Claim, the Reorganized Debtor shall pay the Allowed amount of the Class 4B Claim i) from Cash proceeds from the sale of Real Property Assets, to which such Entity's Lien attaches; or (ii) beginning on the first day of the full month following the expiration of the Sale Period, the Reorganized Debtor shall make interest-only payments at the rate of 5.5% per annum to the Entity holding an Allowed Class 4B Claim for a period of 36 months.<br><br>In month 37, the Claim shall reamortize for a 30-year period, at an interest rate of the Prime Rate + 2%, to be paid monthly, with a final balloon payment due at the end of year 7 of the 30-year term for the remaining balance owed under the Claim. | Impaired | Yes |

| Class | Treatment | Status | Entitled to Vote? |
|-------|-----------|--------|-------------------|
| Class 4C: 1Sharpe Income Solutions Trust<br><br>Mortgage lien asserted against 1714 69th St., Galveston, TX 77551, estimated payoff to total $0 - $275,000.00 | Subject to Section XIII.Sale of Real Property.<br>Pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1146(a), during the Sale Period the Reorganized Debtor will continue to market the Listed Real Property in order to consummate the sale of the Listed Real Property. Additionally, at any time after the Effective Date but prior to the closing of this Chapter 11 Case, the Reorganized Debtor may market and sell any of the Real Property Assets. The Reorganized Debtor will distribute Cash proceeds from the sale of any of the Real Property Assets (including the Listed Real Property) pursuant to the Plan. Prior to distribution of Cash proceeds from any sale of the Debtor's Real Property, the Reorganized Debtor is authorized to first pay reasonable and customary broker / agent fees.<br>Mortgage Payoffs., unless otherwise agreed to by a Holder of an Allowed Class 4C Claim, the Reorganized Debtor shall pay the Allowed amount of the Class 4C Claim i) in full from Cash proceeds from the sale of Real Property Assets, to which such Entity's Lien attaches; or (ii) beginning on the first day of the full month following the expiration of the Sale Period, the Reorganized Debtor shall make interest-only payments at the rate of 5.5% per annum to the Entity holding an Allowed Class 4C Claim for a period of 36 months.<br><br>In month 37, the Claim shall reamortize for a 30-year period, at an interest rate of the Prime Rate + 2%, to be paid monthly, with a final balloon payment due at the end of year 7 of the 30-year term for the remaining balance owed under the Claim. | Impaired | Yes |

7

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| Class 4D: Pinnacle Mortgage<br><br>Mortgage lien asserted against 2113 Sealy, Galveston, TX 77550, estimated payoff to total $0 - $314,000.00 | Subject to Section XIII.Sale of Real Property.<br>Pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1146(a), during the Sale Period the Reorganized Debtor will continue to market the Listed Real Property in order to consummate the sale of the Listed Real Property. Additionally, at any time after the Effective Date but prior to the closing of this Chapter 11 Case, the Reorganized Debtor may market and sell any of the Real Property Assets. The Reorganized Debtor will distribute Cash proceeds from the sale of any of the Real Property Assets (including the Listed Real Property) pursuant to the Plan. Prior to distribution of Cash proceeds from any sale of the Debtor's Real Property, the Reorganized Debtor is authorized to first pay reasonable and customary broker / agent fees.<br>Mortgage Payoffs., unless otherwise agreed to by a Holder of an Allowed Class 4D Claim, the Reorganized Debtor shall pay the Allowed amount of the Class 4D Claim i) in full from Cash proceeds from the sale of Real Property Assets, to which such Entity's Lien attaches; or (ii) beginning on the first day of the full month following the expiration of the Sale Period, the Reorganized Debtor shall make interest-only payments at the rate of 5.5% per annum to the Entity holding an Allowed Class 4D Claim for a period of 36 months.<br><br>In month 37, the Claim shall reamortize for a 30-year period, at an interest rate of the Prime Rate + 2%, to be paid monthly, with a final balloon payment due at the end of year 7 of the 30-year term for the remaining balance owed under the Claim. | Impaired | Yes |

8

| Class | Treatment | Status | Entitled to Vote? |
|-------|-----------|--------|-------------------|
| Class 4E: Jet Lending LLC<br><br>Mortgage lien asserted against 3621 Winnie, Galveston, TX 77550, estimated payoff to total $0 - $192,000.00 | Subject to Section XIII.Sale of Real Property.<br>Pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1146(a), during the Sale Period the Reorganized Debtor will continue to market the Listed Real Property in order to consummate the sale of the Listed Real Property. Additionally, at any time after the Effective Date but prior to the closing of this Chapter 11 Case, the Reorganized Debtor may market and sell any of the Real Property Assets. The Reorganized Debtor will distribute Cash proceeds from the sale of any of the Real Property Assets (including the Listed Real Property) pursuant to the Plan. Prior to distribution of Cash proceeds from any sale of the Debtor's Real Property, the Reorganized Debtor is authorized to first pay reasonable and customary broker / agent fees.<br>Mortgage Payoffs., unless otherwise agreed to by a Holder of an Allowed Class 4E Claim, the Reorganized Debtor shall pay the Allowed amount of the Class 4E Claim i) in full from Cash proceeds from the sale of Real Property Assets, to which such Entity's Lien attaches; or (ii) beginning on the first day of the full month following the expiration of the Sale Period, the Reorganized Debtor shall make interest-only payments at the rate of 5.5% per annum to the Entity holding an Allowed Class 4E Claim for a period of 36 months.<br><br>In month 37, the Claim shall reamortize for a 30-year period, at an interest rate of the Prime Rate + 2%, to be paid monthly, with a final balloon payment due at the end of year 7 of the 30-year term for the remaining balance owed under the Claim. | Impaired | Yes |

9

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| Class 4F: Metropolitan Life Insurance Company<br><br>Mortgage lien asserted against 2101 Sealy, Galveston, TX 77550, estimated payoff to total $0 - $293,000.00 | Subject to Section XIII.Sale of Real Property.<br>Pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1146(a), during the Sale Period the Reorganized Debtor will continue to market the Listed Real Property in order to consummate the sale of the Listed Real Property. Additionally, at any time after the Effective Date but prior to the closing of this Chapter 11 Case, the Reorganized Debtor may market and sell any of the Real Property Assets. The Reorganized Debtor will distribute Cash proceeds from the sale of any of the Real Property Assets (including the Listed Real Property) pursuant to the Plan. Prior to distribution of Cash proceeds from any sale of the Debtor's Real Property, the Reorganized Debtor is authorized to first pay reasonable and customary broker / agent fees.<br>Mortgage Payoffs., unless otherwise agreed to by a Holder of an Allowed Class 4F Claim, the Reorganized Debtor shall pay the Allowed amount of the Class 4F Claim i) in full from Cash proceeds from the sale of Real Property Assets, to which such Entity's Lien attaches; or (ii) beginning on the first day of the full month following the expiration of the Sale Period, the Reorganized Debtor shall make interest-only payments at the rate of 5.5% per annum to the Entity holding an Allowed Class 4F Claim for a period of 36 months.<br><br>In month 37, the Claim shall reamortize for a 30-year period, at an interest rate of the Prime Rate + 2%, to be paid monthly, with a final balloon payment due at the end of year 7 of the 30-year term for the remaining balance owed under the Claim. | Impaired | Yes |

10

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| **Class 5: General Unsecured Claims; estimated amount:**<br><br>$0 - $63,000.00<br><br>**Estimated Recovery: 0-100%** | Unless otherwise agreed to by a Holder of an Allowed General Unsecured Claim, each such Entity shall receive, in full satisfaction of its claim, i) its *pro rata* share of any Cash proceeds from the sale of Real Property Assets after satisfying in full all Allowed Administrative Claims and all Allowed Claims in Classes 1 – 4F; or ii) its *pro rata* share of the GUC Recovery Cash.<br><br>General Unsecured Claims are subject to all statutory, equitable, and contractual subordination claims, rights, and grounds available to the Debtor, the Estate, and pursuant to the Plan, which subordination claims, rights, and grounds are fully enforceable prior to, on, and after the Effective Date. | Impaired | Yes |
| Class 6: Interests<br><br>**Estimated Recovery: 0%** | There shall be no Distribution on account of Class 6 Interests.  Upon the Effective Date, all Interests will be deemed cancelled and will cease to exist. | Impaired | No |

## SECTION III.
## DEFINED TERMS

As used in the Combined Plan and Disclosure Statement, capitalized terms not otherwise defined have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

"Administrative Claim" means a Claim for an expense of administration of the Chapter 11 Case arising under Sections 503(b), 507(b), 503(b)(9) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates; (b) the value of any goods received by the Debtor within 20 days before the Petition Date to the extent that goods were sold to the Debtor in the ordinary course of the Debtor's business; (c) Professional Fee Claims; (d) all fees and charges assessed against the Estates under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; and (f) administrative claims that were timely filed prior to the Administrative Expense Bar Date that were not otherwise objected to.

"Administrative Expense Bar Date" shall be thirty (30) days after the Effective Date.

"Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtor on the Schedules as other than disputed, contingent, or unliquidated and, as to which, the Debtor, the Reorganized Debtor, or other party in interest has not filed an objection; (b) a Claim that is set forth in a timely filed Proof of Claim as to which no objection has been filed and which is not otherwise a Disputed Claim; (c) a Claim that has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtor prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by the Reorganized Debtor on or after the Effective Date; (iii) in any contract, instrument, or other agreement entered into or assumed by Debtor in connection with and in accordance with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed or Disallowed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been timely filed by the Claimant before the applicable rejection Bar Date for such claim or has otherwise been deemed timely filed under applicable law; or (e) a Claim that is allowed pursuant to the terms of the Plan.  For the purpose of determining distributions pursuant to the Plan, allowance under subsections (a) and (b) only is applicable once any of the following occur (1) the Debtor or the Reorganized Debtor, as applicable, determine not to object to the Claim, (2) after the Debtor or the Reorganized Debtor timely objects to the Claim, the Claim is allowed as provided in subparagraphs (c), (d) or (e) above.

"Allowed Claim" or "Allowed . . . Claim" means a Claim that has been Allowed.

"Available Cash" means the aggregate amount of all Cash held by the Debtor on the Effective Date.

"Avoidance Actions" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies which any of the Debtor, the Estate, or other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

"Ballots" mean the ballots upon which the Holders of Impaired Claims shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

"Bankruptcy Code" means title I of the Bankruptcy Reform Act of 1978, as amended from time to time, as set forth in Sections 101 *et seq*. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas having jurisdiction over the Chapter 11 Case.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the General and Local Rules of the Bankruptcy Court.

"Bar Date" means, as applicable, the General Claims Bar Date, Governmental Bar Date, the Administrative Expense Bar Date, or any other applicable deadline to file Claims referenced in the Plan.

"Business Day" means any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

"Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments, and legal tender of the United States of America or instrumentalities thereof.

"Causes of Action" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims, including, without limitation, all claims and any avoidance, preference, recovery, subordination or other actions of the Debtor or the Estate (unless the context expressly states that such Causes of Action belong to another Entity) against Creditors, insiders, or any other Persons or Entities, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date, expressly including without limitation, Litigation and Avoidance Actions.

"Chapter 11 Case" means the Chapter 11 case commenced when the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Southern District of Texas – Galveston Division – on the Petition Date, being administered under Case No. 25-80362.

"Claim" means a claim (as defined in Section 101(5) of the Bankruptcy Code) against the Debtor, including, but not limited to: (a) any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claimant" means the Holder of a Claim.

"Class" means a category of Holders of Claims or Interests, as set forth in Section IX of the Plan.

"Collateral" means any property or interest in property of the Debtor's Estate that is subject to a valid and enforceable Lien to secure a Claim.

"Combined Plan and Disclosure Statement" means this Plan and Disclosure Statement, as modified or amended from time to time.

"Confirmation" means the entry of the Confirmation Order, subject to all conditions specified in Section 17 hereof having been (a) satisfied or (b) waived pursuant to Section 17.

"Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rule 9021.

13

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

"Consummation" or "Consummate" means the occurrence of the Effective Date.

"Creditor" means any Holder of a Claim against the Debtor as specified in Section 101(10) of the Bankruptcy Code.

"Debtor" means 3910 Enterprises, Inc. in the Chapter 11 Case.

"Disallowed Claim" means a Claim, or any portion thereof, that has been disallowed by a Final Order or by other agreement of a Claimant, any Claim that is listed by the Debtor in the Schedules as zero or as disputed and as to which no Proof of Claim has been timely filed, or any Claim that is deemed disallowed pursuant to the terms of the Plan.

"Disclosure Statement" means the portion of this Combined Plan and Disclosure Statement that satisfies the disclosure requirements of section 1125 of the Bankruptcy Code.

"Disputed" means, with respect to any Claim or Interest, any Claim or Interest: (a) listed on the Schedules as unliquidated, disputed, or contingent and as to which no Proof of Claim has been filed; or (b) as to which the Debtor or the Reorganized Debtor, or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtor or the Reorganized Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

"Disputed Claim" means: (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of any deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim that is not a Disallowed Claim that is scheduled by the Debtor in the Schedules as disputed, contingent, or unliquidated and as to which no Proof of Claim has been timely filed; or (iii) any Claim that is not a Disallowed Claim that is not listed in the Schedules and as to which no Proof of Claim has been timely filed.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

"Distributions" means the distributions of Cash to be made in accordance with the Plan.

"Distribution Dates" means collectively the Initial Distribution Date, any Subsequent Distribution(s) Date, and the date of the Final Distribution.

"Distribution Record Date" means the close of business on the Business Day immediately preceding the Effective Date.

"Effective Date" means the date selected by the Debtor, which is a Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect, and (b) all conditions specified in Section XVI.A hereof have been satisfied, unless waived by the Debtor.

"Entity" means an entity as defined in Section 101(15) of the Bankruptcy Code.

"Estate" means the estate of the Debtor in the Chapter 11 Case created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

"Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

"Final Distribution" means the last payment to Holders of Allowed Claims in accordance with the provisions of the Plan.

"Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) that has not been reversed, stayed, modified, or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

"General Claims Bar Date" means December 29, 2025, which was the general deadline for filing proofs of claim for any Claims against the Debtor that arose prior to the Petition Date.

"Governmental Bar Date" means February 23, 2026, which is the deadline for governmental units to file proofs of claim for any Claims against the Debtor that arose prior to the Petition Date.

"GUC Recovery Cash" means the Reorganized Debtor's Available Cash after payment of i) Allowed Administrative Claims; ii) Allowed Claims in Classes 1 – 4F; iii) reasonable and necessary operating expenses on and after the Effective Date, including but not limited to: insurance, taxes, wages, benefits and payroll, maintenance, professional fees, utilities, and reasonable office expenses.

"Holder" means a Person or Entity holding a Claim or Interest.

"Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

"Initial Distribution Date" means the Effective Date, or as soon as practicable thereafter when the initial Distribution shall be made to the Holders of Allowed Claims, as determined by the Reorganized Debtor in accordance with the terms of this Plan.

"Insider" means an insider of the Debtor, as defined in Section 101(31) of the Bankruptcy Code.

"Insurance Policies" means all insurance policies maintained by the Debtor as of the Petition Date.

"Interest" means any equity interest in the Debtor including, but not limited to, all issued, unissued, authorized, or outstanding shares or stock, whether vested or non-vested, together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

15

"Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind) to secure payment of a debt or performance of an obligation.

"Listed Real Property" means the Debtor's real property located at: 913 21st St./Moody, Galveston, TX 77550; 915 21st St./Moody, Galveston, TX 77550; 1714 69th St., Galveston, TX 77551; 1728 69th St., Galveston, TX 77551; 2101 Sealy St., Galveston, TX 77550; 2113 St., Galveston, TX 77550.

"Litigation" means the interest of the Estate, the Debtor or the Reorganized Debtor, as applicable, in any and all claims, rights, and Causes of Action that have been or may be commenced by the Debtor or the Reorganized Debtor, as applicable, except to the extent concerning any Released Parties.  Litigation includes, without limitation not otherwise stated herein, any action: (i) to avoid and recover any transfers of property determined to be preferential, fraudulent, or avoidable pursuant to Sections 544, 545, 547, 548, 549(a), and 550 of the Bankruptcy Code; (ii) for the turnover of property to the Debtor or the Reorganized Debtor, as applicable; (iii) for the recovery of property or payment of money that belongs to or can be asserted by the Debtor or the Reorganized Debtor, as applicable; (iv) for compensation for damages incurred by the Debtor or the Reorganized Debtor; and (iv) equitable subordination actions against Creditors.

"Litigation Recovery" means any Cash or other property received by the Reorganized Debtor from all or any portion of the Litigation, including, but not limited to, awards of damages, attorneys' fees and expenses, interest, and punitive damages, whether recovered by way of settlement, execution on judgment, or otherwise.  If any Litigation is pursued on a contingent-fee basis, the Litigation Recovery will be net of any contingent fee paid to legal counsel.

"Person" means any individual, corporation, limited liability company, general partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit, or other Entity.

"Petition Date" means August 5, 2025, the date on which the Debtor filed its voluntary Chapter 11 petition.

"Plan" means the portion of this Combined Plan and Disclosure Statement that constitutes the chapter 11 plan for the Debtor.

"Plan Documents" means the Plan, the Disclosure Statement, and the Plan Supplement, if any, or other documents or pleadings filed by the Debtor relating to the Plan.

"Plan Supplement" means a supplement or supplements, if any, to the Plan containing certain documents and forms of documents, schedules, and exhibits relevant to the implementation of the Plan, including, but not limited to: (a) a Liquidation Analysis; (b) the Schedule of Assumed Contracts, if any; and (c) the Schedule of Retained Causes of Action.

"Reorganized Debtor" means the reorganized Debtor from and after the Effective Date.

"Priority Non-Tax Claim" means any Claim, other than an Administrative Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

"Pro Rata" means proportionately so that, with respect to a Claim, the ratio of: (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims in the Class or Classes entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

"Professional" means an Entity: (a) employed pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

"Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to Sections 330, 331, or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

"Proof of Claim" means a proof of claim filed pursuant to Section 501 of the Bankruptcy Code or any order of the Bankruptcy Court, together with supporting documents.

"Real Property Assets" means the real property listed on the Debtor's Schedules and includes the Listed Real Property.

"Rejection Bar Date" means the last date for any Entity whose claims arise out of the Bankruptcy Court approved rejection of an executory contract or unexpired lease to file a proof of claim for damages related to such rejection. The Rejection Bar Date for such Claims will be, (i) with respect to executory contracts and unexpired leases rejected pursuant to a Court order other than the Confirmation Order, the date provided by an order approving the rejection, and, (ii) with respect to executory contracts and unexpired leases rejected pursuant to the Confirmation Order, the date that is thirty (30) days after the Effective Date.

"Released Parties" means, collectively, (a) the Debtor; (b) the Estate; (c) Debtor's Professionals; and (d) the Debtor's employees.

"Retained Causes of Action" means the list of retained causes of action filed as part of a Plan Supplement, if any, and includes all claims specifically retained by this Plan, including those claims and Causes of Action specified in Section XIII.E.

"Sale Period" means the 180 days following the Effective Date.

"Schedules" means the respective schedules of assets and liabilities and statements of financial affairs filed by the Debtor pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

"Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under Sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

"Subsequent Distribution Date" means any date after the Initial Distribution Date upon which the Reorganized Debtor makes a distribution to any Holders of Allowed Administrative, Secured, Priority, Unsecured Claims, or Holders of Allowed Claims in Classes 4A – 4F.

"Tax" means any tax, charge, fee, levy, impost, or other assessment by any federal, state, local, or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation, and withholding tax.  "Tax" shall include any interest or additions attributable to, imposed on, or with respect to such assessments.

"Tax Claim" means all or that portion of an Allowed Claim held by a Governmental Unit for a Tax assessed or assessable against the Debtor.

"Unclaimed Property" means property redistributed due to a Creditor's failure to comply with the requirements to receive a Distribution pursuant to Section X.

"Unimpaired Claim" means an unimpaired Claim within the meaning of Section 1124 of the Bankruptcy Code.

"Unsecured Claim" means any Claim against the Debtor or Estate that is not a Secured Claim, an Administrative Claim, a Priority Claim, or an Interest.

"U.S. Trustee" means the Office of the United States Trustee for Region 7 (Southern District of Texas).

"Voting Instructions" means the instructions for voting on the Plan contained on the Ballots.

"Voting Record Date" means the date as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Plan.

## SECTION IV.
## THE CHAPTER 11 CASE

The following is a brief description of certain material events that have occurred during the Chapter 11 Case.

On August 5, 2025, the Debtor filed its voluntary chapter 11 petition in this Bankruptcy Court. The filing was an emergency filing to stop a foreclosure schedule for August 6, 2025. The Debtor believes the foreclosure was wrongful and, prior to filing, had sued the lender for refusing to provide a payoff. That case is still pending and the Debtor or Reorganized Debtor, as applicable, will continue to pursue the lawsuit post-petition.

On August 17, 2025, the Debtor filed the *Declaration of Rejone Edwards in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 7], which gives a detailed description of the pre-petition payoff issues and the events leading to this Chapter 11 Case. Additionally, the Debtor filed the following first-day motions:

- Emergency Motion for Interim and Continuing Use of Cash Collateral [Docket No. 8];

- Emergency Motion to Continue to Operate Cash Management System and Maintain Existing Bank Account [Docket No. 9]; and

- Emergency Motion for Entry of an Order (I) Authorizing the Debtor to Redact Certain Personally Identifiable Information, and (II) Extending the Time to File Debtor's Schedules and Statement of Financial Affairs [Docket No. 10].

After a hearing on August 19, 2025, the Court granted each of the above motions. After a final hearing on September 15, 2025, the Court granted the Debtor's use of cash collateral on a final basis. [Docket No. 46].

On August 25, 2025, the Debtor filed its *Emergency Motion to (I) Approve the Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibit Utility Providers from Altering, Refusing, or Discontinuing Services, and (III) Approve the Debtor's Proposed Procedures for Resolving Additional Assurance Requests* [Docket No. 25]. After a hearing on August 26, 2025, the Court granted this motion.

The Debtor employed two professionals during the Chapter 11 Case: i) Genevieve Graham PLLC d/b/a Graham PLLC as Debtor's bankruptcy counsel [Order authorizing employment at Docket No. 62], and ii) Chart Capital Management LLC as the Debtor's financial advisor [Order authorizing employment at Docket No. 63].

The Debtor also sold one piece of real property during the Chapter 11 Case. On September 16, 2025, the Debtor filed its *Emergency Motion to Sell Property Free and Clear of Liens, Claims, and Encumbrances* [Docket No. 48] to sell its real property at 3314 M 1/2, Galveston, TX 77550. After a hearing on September 24, 2025, the Court authorized the sale. The Debtor has since closed on the sale and received cash proceeds, which the Debtor has used to pay expenses under the budget and meet its other obligations under the Bankruptcy Code, including payment of U.S. Trustee quarterly fees.

After the Court extended the period for the Debtor to file its schedules and statement of financial affairs, the Debtor filed its Schedules on September 19, 2025.

Finally, the Debtor sought and received an extension to the exclusive period to file its chapter 11 plan. The Court extended the exclusive deadline for the Debtor to file its chapter 11 plan to January 31, 2026 [Docket No. 73].

## SECTION V.
## CONFIRMATION AND VOTING PROCEDURES

### A.  Confirmation Hearing.

On [●], 2026, the Court entered an order conditionally approving the Combined Plan and Disclosure Statement (the "Conditional Approval and Procedures Order") for solicitation purposes only and authorizing the Debtor to solicit the Combined Plan and Disclosure Statement.  The Confirmation Hearing has been scheduled for a virtual hearing on [●]**, 2026, at [●] _.m. (prevailing Central Time)** to consider (a) final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) confirmation of the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code.  The Confirmation Hearing may be adjourned from time to time by the Debtor without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Court.

### B.  Procedures for Objections.

Any objection to final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or confirmation of the Combined Plan and Disclosure Statement must be made in writing and filed with the Court by no later than [●]**, 2026**.  **Unless an objection is timely filed and served, it may not be considered by the Court at the Confirmation Hearing.**

### C.  Requirements for Confirmation.

The Court will confirm the Combined Plan and Disclosure Statement only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code.  Among the requirements for confirmation is that the Combined Plan and Disclosure Statement be:  (i) accepted by all Impaired Classes of Claims and Interests or, if rejected by an Impaired Class, that the Combined Plan and Disclosure Statement "does not discriminate unfairly" against, and is "fair and equitable" with respect to, such Class; and (ii) feasible.  The Court must also find that:

(a)     the Combined Plan and Disclosure Statement has classified Claims and Interests in a permissible manner;

(b)     the Combined Plan and Disclosure Statement complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and

(c)     the Combined Plan and Disclosure Statement has been proposed in good faith.

The Debtor believes that the Combined Plan and Disclosure Statement complies, or will comply, with all such requirements.

### D. **Classification of Claims and Interests.**

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders.  In accordance with section 1123 of the Bankruptcy Code, the Combined Plan and Disclosure Statement divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to section 1123(a)(1) of the Bankruptcy Code need not be and have not been classified).

Section 1122 of the Bankruptcy Code requires the Combined Plan and Disclosure Statement to place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests in such class.  The Combined Plan and Disclosure Statement creates separate Classes to deal respectively with Priority Claims, various Secured Claims, Unsecured Claims, and Interests.  The Debtor believes that the Combined Plan and Disclosure Statement's classifications place substantially similar Claims or Interests in the same Class and, thus, meet the requirements of section 1122 of the Bankruptcy Code.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest.  The Debtor believes that the Combined Plan and Disclosure Statement complies with such standard.  If the Court finds otherwise, however, it could deny confirmation of the Combined Plan and Disclosure Statement if the holders of Claims or Interests affected do not consent to the treatment afforded them under the Combined Plan and Disclosure Statement.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim also is placed in a particular Class for the purpose of receiving distributions pursuant to the Combined Plan and Disclosure Statement only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

The Debtor believes that the Combined Plan and Disclosure Statement has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law.  It is possible that a holder of a Claim or Interest may challenge the Debtor's classification of Claims or Interests and that the Court may find that a different classification is required for the Combined Plan and Disclosure Statement to be confirmed.  If such a situation develops, the Debtor intends, in accordance with the terms of the Combined Plan and Disclosure Statement, to make such permissible modifications to the Combined Plan and Disclosure Statement as may be necessary to permit its confirmation.  Any such reclassification could adversely affect holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Combined Plan and Disclosure Statement.

**EXCEPT AS SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A**

**CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE COMBINED PLAN AND DISCLOSURE STATEMENT'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The amount of any Impaired Claim that ultimately is Allowed by the Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Court with respect to each Impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Impaired Class. Thus, the actual recovery ultimately received by a particular holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class. Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein or the actual Distribution received by creditors. The projected recoveries are based on information available to the Debtor as of the date hereof and reflect the Debtor's views as of the date hereof only.

The classification of Claims and Interests and the nature of distributions to members of each Class are summarized herein. The Debtor believes that the consideration, if any, provided under the Combined Plan and Disclosure Statement to holders of Allowed Claims reflects an appropriate resolution of their Allowed Claims taking into account the differing nature and priority of such Claims and Interests. The Court must find, however, that a number of statutory tests are met before it may confirm the Combined Plan and Disclosure Statement. Many of these tests are designed to protect the interests of holders of Claims or Interests who are not entitled to vote on the Combined Plan and Disclosure Statement, or do not vote to accept the Combined Plan and Disclosure Statement, but who will be bound by the provisions of the Combined Plan and Disclosure Statement if it is confirmed by the Court.

### E.  Impaired Claims or Interests.

Pursuant to section 1126 of the Bankruptcy Code, only the holders of Claims in Classes Impaired by the Combined Plan and Disclosure Statement and receiving a payment or Distribution under the Combined Plan and Disclosure Statement may vote to accept or reject the Combined Plan and Disclosure Statement. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be Impaired if the Combined Plan and Disclosure Statement alters the legal, equitable, or contractual rights of the holders of such Claims or Interests treated in such Class. The holders of Claims not Impaired by the Combined Plan and Disclosure Statement are deemed to accept the Combined Plan and Disclosure Statement and do not have the right to vote on the Combined Plan and Disclosure Statement. The holders of Claims or Interests in any Class which will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote. Finally, the holders of Claims or Interests whose Claims or Interests are not classified under the Combined Plan and Disclosure Statement are not entitled to vote on the Combined Plan and Disclosure Statement.

Under the Combined Plan and Disclosure Statement, Holders of Claims in Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired and, therefore, not entitled to vote on the Combined Plan and Disclosure Statement and are deemed to accept the Combined Plan and Disclosure Statement.  Holders of Claims in Class 3 (Secured Ad Valorem Tax Claims), Class 4A (Pacific Asset Holding LLC), Class 4B (Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust IX-B), Class 4C (1Sharpe Income Solutions Trust), Class 4D (Pinnacle Mortgage), Class 4E (Jet Lending LLC), Class 4F (Metropolitan Life Insurance Company), and Class 5 (General Unsecured Claims) are Impaired and entitled to vote on the Plan.  Holders of Claims and Interests in Class 6 (Interests) will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement and, therefore, are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote.

**ACCORDINGLY, BALLOTS FOR ACCEPTANCE OR REJECTION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE BEING PROVIDED TO HOLDERS OF CLAIMS IN CLASSES 3, 4A, 4B, 4C, 4D, 4E, 4F, AND 5.**

### F.  Confirmation without Necessary Acceptances; Cramdown.

In the event that any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan.  A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, determined without including any acceptance of the plan by any insider holding a claim in that class, and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code.  Section 1129(b) of the Bankruptcy Code requires that a court find that a plan (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests.  Here, because holders of Interests in Class 6 are deemed to reject the Combined Plan and Disclosure Statement, the Debtor will seek confirmation of the Combined Plan and Disclosure Statement from the Court by satisfying the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code.  The Debtor believes that such requirements are satisfied, as no holder of a Claim or Interest junior to those in Class 6 is entitled to receive any property under the Combined Plan and Disclosure Statement.

The concept of "unfair discrimination" is not defined in the Bankruptcy Code, but has been suggested in recent case law to arise when a difference in a plan's treatment of two classes of equal priority results in a materially lower percentage recovery for the non-accepting class.  Based upon their understanding of existing case law, the Debtor does not believe that the Plan unfairly discriminates against any Class of Claims.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." To determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cramdown" tests for secured creditors, unsecured creditors, and equity holders, as follows:

    a.    <u>Secured Creditors</u>.  Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of

its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

b.     <u>Unsecured Creditors</u>.  Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

c.     <u>Interests</u>.  Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

As discussed above, the Debtor believes that the distributions provided under the Combined Plan and Disclosure Statement satisfy the absolute priority rule, where required.

### G.    <u>Feasibility.</u>

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor (unless such liquidation or reorganization is proposed in the Combined Plan and Disclosure Statement).  For purposes of this test, the Debtor has analyzed the ability of the Reorganized Debtor to meet its obligations under the Combined Plan and Disclosure Statement.  Based on the Debtor's analysis and estimated revenue projections, their existing cash on hand, and the Administrative Claims Payment, the Reorganized Debtor will have sufficient assets to satisfy its obligations under the Combined Plan and Disclosure Statement.  Therefore, the Debtor believes that the Combined Plan and Disclosure Statement will meet the feasibility requirements of the Bankruptcy Code.

### H.    <u>Best Interests Test and Liquidation Analysis.</u>

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires the Court to determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted the plan.  The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 case was converted to a case under chapter 7 of the Bankruptcy Code.  To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the

costs, expenses, and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to holders of claims or interests in any impaired class is greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the holders of claims or interests in such impaired class.

The Debtor has prepared a liquidation analysis that summarizes the Debtor's best estimate of recoveries by holders of Claims if the Chapter 11 Case was converted to a case under chapter 7 (the "Liquidation Analysis"), which will be filed prior to the Confirmation Hearing.

If the Chapter 11 Case was converted to a Chapter 7 proceeding, first and foremost, the Estate would not have the benefit of the Administrative Claims Payment or the Debtor's revenue projections from an operating entity and general unsecured creditors would likely receive no recovery in a Chapter 7 proceeding. Further, the Debtor's estate would incur the costs of payment of a statutorily allowed commission to the Chapter 7 trustee, as well as the costs of counsel and other professionals retained by the trustee.

Based upon the foregoing and the Liquidation Analysis, the Debtor believes that creditors will receive at least as much or more under the Plan than they would receive if the Chapter 11 Case was converted to Chapter 7 cases.

## I.   Eligibility to Vote on the Combined Plan and Disclosure Statement.

Unless otherwise ordered by the Court, only holders of Allowed Claims in Classes 3, 4A, 4B, 4C, 4D, 4E, 4F, and 5, may vote on the Combined Plan and Disclosure Statement. Further, subject to the tabulation procedures that were approved by the Conditional Approval and Procedures Order, in order to vote on the Combined Plan and Disclosure Statement, you must hold an *Allowed* Claim in Class 3, 4A, 4B, 4C, 4D, 4E, 4F, and 5, or be the holder of a Claim that has been temporarily Allowed for voting purposes only pursuant to the approved tabulation procedures or under Bankruptcy Rule 3018(a).

## J.   Solicitation Package / Release Opt-Out.

All holders of Allowed Claims in Classes 3, 4A, 4B, 4C, 4D, 4E, 4F, and 5 will receive a Solicitation Package. The Solicitation Packages will contain: (i) the Combined Plan and Disclosure Statement; (ii) the Conditional Approval Order and Procedures Order; (iii) notice of the Confirmation Hearing; (iv) a form of Ballot, including voting instructions and (v) such other materials as the Court may direct or approve or that the Debtor deems appropriate.

All other Creditors and parties in interest not entitled to vote on the Combined Plan and Disclosure Statement will receive only a copy of the notice of Confirmation Hearing.

## K.   Voting Procedures, Voting Deadline, and Applicable Deadlines.

The Voting Record Date for determining which holders of Claims in Classes 3, 4A, 4B, 4C, 4D, 4E, 4F, and 5 may vote on the Combined Plan and Disclosure Statement is [●].

In order for your Ballot to count, you must (1) complete, date, and properly execute the Ballot and (2) properly deliver the Ballot to the Debtor at (a) the following address:  Graham PLLC, 4203 Montrose Blvd., Suite 550, Houston, Texas 77006; *and* the following email address with "3910 Enterprises" in the subject line: 3910enterprisesinc@graham-pllc.com.

**IF YOU ARE ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL OR EMAIL THE BALLOT YOU RECEIVE.  PLEASE BE SURE TO COMPLETE ALL BALLOT ITEMS PROPERLY AND LEGIBLY.  IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT, OR YOU LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THE COMBINED PLAN AND DISCLOSURE STATEMENT OR PROCEDURES FOR VOTING ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, PLEASE CONTACT THE DEBTOR AT: GRAHAM PLLC, ATTN: GENEVIEVE M. GRAHAM, GGRAHAM@GRAHAM-PLLC.COM, (832) 367.5705.**

### L.  Acceptance of the Combined Plan and Disclosure Statement.

If you are a holder of a Claim in Classes 3, 4A, 4B, 4C, 4D, 4E, 4F, or 5, your acceptance of the Combined Plan and Disclosure Statement is important.  The Combined Plan and Disclosure Statement can be confirmed by the Bankruptcy Court and, thereby, made binding on you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the Claims in each Impaired Class who vote on the Combined Plan and Disclosure Statement and if the Combined Plan and Disclosure Statement otherwise satisfies the applicable requirements of Bankruptcy Code section 1129(a). If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Combined Plan and Disclosure Statement if it finds that the Combined Plan and Disclosure Statement (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Combined Plan and Disclosure Statement and (ii) otherwise satisfies the requirements of Bankruptcy Code section 1129(b).

### SECTION VI.
### CERTAIN RISK FACTORS, TAX CONSEQUENCES, AND OTHER DISCLOSURES

### A.  Certain Risk Factors to be Considered.

THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW.  HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT.   THESE FACTORS SHOULD NOT, HOWEVER, BE

REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION.

### B. **The Combined Plan and Disclosure Statement May Not Be Accepted.**

The Debtor can make no assurances that the requisite acceptances of the Combined Plan and Disclosure Statement will be received, and the Debtor may need to obtain acceptances of an alternative plan for the Debtor, or otherwise, that may not have the support of the creditors or may be required to liquidate the Estate under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to creditors as those proposed in the Combined Plan and Disclosure Statement.

### C. **The Combined Plan and Disclosure Statement May Not Be Confirmed.**

Even if the Debtor receives the requisite acceptances, there is no assurance that the Court, which may exercise substantial discretion as a court of equity, will confirm the Combined Plan and Disclosure Statement. Even if the Court determined that the Combined Plan and Disclosure Statement and the balloting procedures and results were appropriate, the Court could still decline to confirm the Combined Plan and Disclosure Statement if it finds that any of the statutory requirements for confirmation had not been met. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan. While, as more fully set forth Section 6, the Debtor believes that the Combined Plan and Disclosure Statement complies with or will comply with all such requirements, there can be no guarantee that the Court will agree.

Moreover, there can be no assurance that modifications to the Combined Plan and Disclosure Statement will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes. If the Combined Plan and Disclosure Statement is not confirmed, it is unclear what distributions holders of Claims ultimately would receive with respect to their Claims. If an alternative could not be agreed to, it is possible that the Debtor would have to liquidate its remaining assets in chapter 7, in which case it is likely that the holders of Allowed Claims would receive substantially less favorable treatment than they would receive under the Combined Plan and Disclosure Statement.

### D. **Distributions to Holders of Allowed Claims Under the Combined Plan and Disclosure Statement May be Inconsistent with Projections.**

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for Distribution. There can be no assurance that the estimated Claim amounts set forth in the Combined Plan and Disclosure Statement are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors. Both the actual amount of Allowed Claims in a particular Class and the funds available for distribution to such Class may differ from the Debtor's estimates. If the total amount of Allowed Claims in a Class is higher than the Debtor's estimates, or the funds available for distribution to such Class are lower than the Debtor's estimates, the percentage recovery to holders of Allowed Claims in such Class will be less than projected.

### E.  Objections to Classification of Claims.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class.  The Debtor believes that the classification of Claims and Interests under the Combined Plan and Disclosure Statement complies with the requirements set forth in the Bankruptcy Code.  Nevertheless, there can be no assurance the Court will reach the same conclusion.

To the extent that the Court finds that a different classification is required for the Combined Plan and Disclosure Statement to be confirmed, the Debtor would seek to (i) modify the Combined Plan and Disclosure Statement to provide for whatever classification might be required for Confirmation and (ii) use the acceptances received from any holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such holder ultimately is deemed to be a member.  Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such holder was initially a member, or any other Class under the Combined Plan and Disclosure Statement, by changing the composition of such Class and the vote required for approval of the Combined Plan and Disclosure Statement.  There can be no assurance that the Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Combined Plan and Disclosure Statement based upon such reclassification.  Except to the extent that modification of classification in the Combined Plan and Disclosure Statement requires re-solicitation, the Debtor will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Court that acceptance of the Combined Plan and Disclosure Statement by any holder of Claims pursuant to this solicitation will constitute a consent to the Combined Plan and Disclosure Statement's treatment of such holder, regardless of the Class as to which such holder is ultimately deemed to be a member.  The Debtor believes that under the Bankruptcy Rules, they would be required to resolicit votes for or against the Combined Plan and Disclosure Statement only when a modification adversely affects the treatment of the Claim or Interest of any holder.

The Bankruptcy Code also requires that the Combined Plan and Disclosure Statement provide the same treatment for each Claim or Interest of a particular Class unless the holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest.  The Debtor believes that the Combined Plan and Disclosure Statement complies with the requirement of equal treatment.  To the extent that the Court finds that the Combined Plan and Disclosure Statement does not satisfy such requirement, the Court could deny confirmation of the Combined Plan and Disclosure Statement.  Issues or disputes relating to classification or treatment could result in a delay in the confirmation and consummation of the Combined Plan and Disclosure Statement and could increase the risk that the Combined Plan and Disclosure Statement will not be consummated.

### F.  Failure to Consummate the Combined Plan and Disclosure Statement.

Although the Debtor believes that the Effective Date will occur and may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

### G. The Releases May Not Be Approved.

There can be no assurance that the releases will be granted.  Failure of the Court to grant such relief may result in a plan that differs from the Combined Plan and Disclosure Statement or the Plan not being confirmed.

### H. Reductions to Estimated Creditor Recoveries.

The Allowed amount of Claims in any Class of Classified Claims could be greater than projected, which, in turn, could cause the amount of distributions to creditors in such Class to be reduced substantially.

### I. Tax Consequences for U.S. Holders of Certain Claims.

**THE FOLLOWING SUMMARY IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM OR INTEREST.  EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

Generally, a holder of a Claim should in most, but not all, circumstances recognize gain or loss equal to the difference between the "amount realized" by such holder in exchange for its Claim and such holder's adjusted tax basis in the Claim.  The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan of reorganization in respect of a holder's Claim.  The tax basis of a holder in a Claim will generally be equal to the holder's cost therefor. To the extent applicable, the character of any recognized gain or loss (*e.g.*, ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the Claim in the holder's hands, the purpose and circumstances of its acquisition, the holder's holding period of the Claim, and the extent to which the holder previously claimed a deduction for the worthlessness of all or a portion of the Claim. Generally, if the Claim is a capital asset in the holder's hands, any gain or loss realized will generally be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the holder has held such Claim for more than one year.

A creditor who receives Cash in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest.  A creditor who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized for U.S. federal income tax purposes as interest, regardless of whether such creditor realizes an overall gain or loss as a result of surrendering its Claim.  A creditor who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such creditor realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim.

Under the Plan, the holders of certain Claims will likely receive only a partial distribution of their Allowed Claims. Whether the applicable holder of such Claims will recognize a loss or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the holder and its Claims. Creditors should consult their own tax advisors.

**J.   Releases and Injunctions.**

This Combined Plan and Disclosure Statement contains certain releases and injunction language. Parties are urged to read these provisions carefully to understand how Confirmation and consummation of the Plan will affect any Claim, interest, right, or action with regard to the Debtor and certain third parties.

**THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS AGAINST THE DEBTOR TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED UNDER THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND ALL OTHER APPLICABLE LAW.**

**K.   Alternatives to the Combined Plan and Disclosure Statement.**

If the requisite acceptances are not received or the Combined Plan and Disclosure Statement is not confirmed and consummated, the theoretical alternatives to the Combined Plan and Disclosure Statement would be (a) formulation of an alternative chapter 11 plan, (b) conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (c) dismissal of the Chapter 11 Case. It does not appear that any of these alternatives, even if viable, would afford holders of Claims or Interests a greater recovery than what is provided by the Combined Plan and Disclosure Statement.

If the Combined Plan and Disclosure Statement is not confirmed, then the Debtor or any other party in interest could attempt to formulate a different plan. The additional costs, including, among other amounts, additional professional fees, all of which would constitute Administrative Claims (subject to allowance thereof), however, may be so significant that one or more parties in interest could request that the Chapter 11 Case be converted to chapter 7.

If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Case may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate and distribute the Debtor's remaining assets in accordance with the priorities established by the Bankruptcy Code. As discussed above and indicated in the Liquidation Analysis, the Debtor believes that the Combined Plan and Disclosure Statement provides a better outcome for holders of Claims than a chapter 7 liquidation would provide.

If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Case also could be dismissed. Among other effects, dismissal would result in the termination of the automatic stay, thus permitting creditors to assert state-law rights and remedies against the Debtor and its assets, likely to the detriment of other creditors. While it is impossible to predict precisely what would happen in the event the Chapter 11 Case is dismissed, it is unlikely that dismissal would result in a ratable distribution of the Debtor's assets among creditors as provided in the Combined Plan and Disclosure Statement. Thus, the vast majority of creditors, including general

unsecured creditors, could expect to receive less in the dismissal scenario than they would receive under the Combined Plan and Disclosure Statement.

## SECTION VII.
## UNCLASSIFIED CLAIMS

### A.  Unclassified Claims.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified for purposes of voting or receiving Distributions. Rather, all such Claims are treated separately as unclassified Claims as set forth in this Section, and the holders thereof are not entitled to vote on the Combined Plan and Disclosure Statement.

### B.  Administrative Claims.

Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim shall receive Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtor or Reorganized Debtor, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtor's business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtor's business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.

Holders of Administrative Claims (including, without limitation, Professionals requesting compensation or reimbursement of such expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code) that do not file such requests by the applicable deadline provided for herein may be subject to objection for untimeliness and may be prohibited by order of the Bankruptcy Court from asserting such claims against the Debtor, the Reorganized Debtor, or their successors or assigns, or their property.  Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court. Unless otherwise agreed to by any Professional, all allowed professional fees shall be paid in full on the Effective Date.

All fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date.

Subject only to Section XVIII.B, notwithstanding anything else to the contrary herein, the Debtor shall cause all allowed administrative claims (including without limitation all professional fees) to be paid in full on earlier of the Effective Date, or upon approval of such allowed administrative claims, or as agreed to by each Holder of an Administrative Claim.

31

### C.  **Priority Tax Claims.**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Tax Claim, the Debtor, Reorganized Debtor shall pay each holder of an Allowed Priority Tax Claim, from Available Cash, the full unpaid amount of such Allowed Priority Tax Claim on the earliest of the following dates:  (i) on or as soon as practicable after the Effective Date, (ii) on or as soon as practicable after the date such Allowed Priority Tax Claim becomes an Allowed Claim, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law.

## SECTION VIII.
## CLASSIFICATION OF CLAIMS AND INTERESTS

### A.  **Summary of Classification.**

The provisions of this Section VIII govern Claims against and Interests in the Debtor.

The following table designates the Classes of Claims against, and Interests in, the Debtor and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Combined Plan and Disclosure Statement in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to accept or reject the Combined Plan and Disclosure Statement.  A Claim or portion thereof is classified in a particular Class only to the extent that such Claim or portion thereof qualifies within the description of such Class and is classified in a different Class to the extent that the portion of such Claim qualifies within the description of such different Class.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Other Secured Claims | Unimpaired | No (presumed to accept) |
| 2 | Other Priority Claims | Unimpaired | No (presumed to accept) |
| 3 | Secured Ad Valorem Tax Claims | Impaired | Yes |
| 4A | Pacific Asset Holding LLC | Impaired | Yes |
| 4B | Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust IX-B | Impaired | Yes |
| 4C | 1Sharpe Income Solutions Trust | Impaired | Yes |
| 4D | Pinnacle Mortgage | Impaired | Yes |
| 4E | Jet Lending LLC | Impaired | Yes |
| 4F | Metropolitan Life Insurance Company | Impaired | Yes |
| 5 | General Unsecured Claims | Impaired | Yes |

32

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 6 | Interests | Impaired/ Cancelled | No (presumed to reject) |

## B.  Special Provision Governing Unimpaired Claims.

Except as otherwise provided in the Combined Plan and Disclosure Statement, nothing under the Combined Plan and Disclosure Statement shall affect the rights of the Debtor or the Reorganized Debtor, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

## SECTION IX.
## TREATMENT OF CLAIMS AND INTERESTS

### A.  Class 1—Other Secured Claims.

(a)    Classification.  Class 1 consists of all Other Secured Claims.

(b)    Treatment.  The Debtor does not believe that there are any Other Secured Claims. To the extent any Other Secured Claims exist, the Reorganized Debtor shall pay the Allowed amount of each Other Secured Claim to each Entity holding an Other Secured Claim as soon as practicable following the later of: (a) the Effective Date and (b) the date such Other Secured Claim becomes an Allowed Claim (or as otherwise permitted by law).  The Debtor or Reorganized Debtor shall pay each Entity holding an Other Secured Claim in Cash in full in respect of such Allowed Claim from the Petition Date; *provided however*, that such Entity may be treated on such less favorable terms as may be agreed to by such Entity.

(c)    Impairment and Voting.  Class 1 is Unimpaired.  Holders of Other Secured Claims are conclusively presumed to have accepted the Combined Plan and Disclosure Statement pursuant to section 1126(f) of the Bankruptcy Code and, accordingly, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement

### B.  Class 2—Other Priority Claims.

(d)    Classification.  Class 2 consists of all Other Priority Claims.

(e)    Treatment.  The Debtor does not believe that there are any Other Priority Claims. To the extent any Other Priority Claims exist, the Reorganized Debtor shall pay the Allowed amount of each Other Priority Claim to each Entity holding an Other Priority Claim as soon as practicable following the later of: (a) the Effective Date and (b) the date Other Priority Claim becomes an Allowed Claim (or as otherwise permitted by law). The Debtor or Reorganized Debtor shall pay each Entity holding an Other Priority Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; *provided however*, that such Entity may be treated on such less favorable terms as may be agreed to by such Entity.

33

(f)     Impairment and Voting.  Class 2 is Unimpaired.  Holders of Other Priority Claims are conclusively presumed to have accepted the Combined Plan and Disclosure Statement pursuant to section 1126(f) of the Bankruptcy Code and, accordingly, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

### C.  Class 3—Secured Ad Valorem Tax Claims.

(a)     Classification.  Class 3 consists of the Secured Ad Valorem Tax Claims.

(b)     Treatment.  Except to the extent previously paid in full or to the extend Holders of Secured Ad Valorem Tax Claims agrees to less favorable treatment, the Reorganized Debtor shall pay the Allowed amount of each Secured Ad Valorem Tax Claim to each Entity holding a Secured Ad Valorem Tax either i) in full from Cash proceeds from the sale of Real Property Assets, to which such Entity's Lien attaches; (ii) monthly, over a period of 60 months at 12% interest, beginning, not later than, the first full month after the Sale Period; or (iii) or on any terms as may be agreed to by such Entity.

(c)     Impairment and Voting.  Class 3 is Impaired and the Holders thereof are entitled to vote on the Plan.

### D.  Class 4A—Pacific Asset Holding LLC.

(a)     Classification.  Class 4A consists of the Claim of Pacific Asset Holding LLC.

(b)     Treatment.  Except to the extent previously paid in full or unless otherwise agreed to by a Holder of an Allowed Class 4A Claim, subject to Section XIII.Sale of Real Property.

(c)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1146(a), during the Sale Period the Reorganized Debtor will continue to market the Listed Real Property in order to consummate the sale of the Listed Real Property. Additionally, at any time after the Effective Date but prior to the closing of this Chapter 11 Case, the Reorganized Debtor may market and sell any of the Real Property Assets. The Reorganized Debtor will distribute Cash proceeds from the sale of any of the Real Property Assets (including the Listed Real Property) pursuant to the Plan. Prior to distribution of Cash proceeds from any sale of the Debtor's Real Property, the Reorganized Debtor is authorized to first pay reasonable and customary broker / agent fees.

(d)     Mortgage Payoffs., the Reorganized Debtor shall pay the Allowed amount of the Class 4A Claim i) in full from Cash proceeds from the sale of Real Property Assets, to which such Entity's Lien attaches; or (ii) beginning on the first day of the full month following the expiration of the Sale Period, the Reorganized Debtor shall make interest-only payments at the rate of 5.5% per annum to the Entity holding an Allowed Class 4A Claim for a period of 36 months. In month 37, the Claim shall reamortize for a 30-year period, at an interest rate of the Prime Rate + 2%, to be paid monthly, with a final balloon payment due at the end of year 7 of the 30-year term for the remaining balance owed under the Claim.

(e)     Impairment and Voting.  Class 4A is Impaired and the Holders thereof are entitled to vote on the Plan.

### E. **Class 4B—Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust IX-B.**

(a)      <u>Classification</u>.  Class 4B consists of Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust IX-B.

(b)      <u>Treatment</u>.  Except to the extent previously paid in full or unless otherwise agreed to by a Holder of an Allowed Class 4B Claim, subject to Section XIII.Sale of Real Property.

(c)      Pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1146(a), during the Sale Period the Reorganized Debtor will continue to market the Listed Real Property in order to consummate the sale of the Listed Real Property. Additionally, at any time after the Effective Date but prior to the closing of this Chapter 11 Case, the Reorganized Debtor may market and sell any of the Real Property Assets. The Reorganized Debtor will distribute Cash proceeds from the sale of any of the Real Property Assets (including the Listed Real Property) pursuant to the Plan. Prior to distribution of Cash proceeds from any sale of the Debtor's Real Property, the Reorganized Debtor is authorized to first pay reasonable and customary broker / agent fees.

(d)      Mortgage Payoffs., the Reorganized Debtor shall pay the Allowed amount of the Class 4B Claim i)  from Cash proceeds from the sale of Real Property Assets, to which such Entity's Lien attaches; or (ii) beginning on the first day of the full month following the expiration of the Sale Period, the Reorganized Debtor shall make interest-only payments at the rate of 5.5% per annum to the Entity holding an Allowed Class 4B Claim for a period of 36 months. In month 37, the Claim shall reamortize for a 30-year period, at an interest rate of the Prime Rate + 2%, to be paid monthly, with a final balloon payment due at the end of year 7 of the 30-year term for the remaining balance owed under the Claim.

(e)      <u>Impairment and Voting</u>.  Class 4B is Impaired and the Holders thereof are entitled to vote on the Plan.

### F. **Class 4C—1Sharpe Income Solutions Trust.**

(a)      <u>Classification</u>.  Class 4C consists of 1Sharpe Income Solutions Trust.

(b)      <u>Treatment</u>.  Except to the extent previously paid in full or unless otherwise agreed to by a Holder of an Allowed Class 4C Claim, subject to Section XIII.Sale of Real Property.

(c)      Pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1146(a), during the Sale Period the Reorganized Debtor will continue to market the Listed Real Property in order to consummate the sale of the Listed Real Property. Additionally, at any time after the Effective Date but prior to the closing of this Chapter 11 Case, the Reorganized Debtor may market and sell any of the Real Property Assets. The Reorganized Debtor will distribute Cash proceeds from the sale of any of the Real Property Assets (including the Listed Real Property) pursuant to the Plan. Prior to distribution of Cash proceeds from any sale of the Debtor's Real Property, the Reorganized Debtor is authorized to first pay reasonable and customary broker / agent fees.

(d)      Mortgage Payoffs., the Reorganized Debtor shall pay the Allowed amount of the Class 4C Claim i) in full from Cash proceeds from the sale of Real Property Assets, to which

such Entity's Lien attaches; or (ii) beginning on the first day of the full month following the expiration of the Sale Period, the Reorganized Debtor shall make interest-only payments at the rate of 5.5% per annum to the Entity holding an Allowed Class 4C Claim for a period of 36 months. In month 37, the Claim shall reamortize for a 30-year period, at an interest rate of the Prime Rate + 2%, to be paid monthly, with a final balloon payment due at the end of year 7 of the 30-year term for the remaining balance owed under the Claim.

(e)    _Impairment and Voting_.  Class 4C is Impaired, and the Holder thereof is entitled to vote on the Plan.

### G.  **Class 4D—Pinnacle Mortgage.**

(a)    _Classification_.  Class 4D consists of Pinnacle Mortgage.

(b)    _Treatment_.  Except to the extent previously paid in full or unless otherwise agreed to by a Holder of an Allowed Class 4D Claim, subject to Section XIII.Sale of Real Property.

(c)    Pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1146(a), during the Sale Period the Reorganized Debtor will continue to market the Listed Real Property in order to consummate the sale of the Listed Real Property. Additionally, at any time after the Effective Date but prior to the closing of this Chapter 11 Case, the Reorganized Debtor may market and sell any of the Real Property Assets. The Reorganized Debtor will distribute Cash proceeds from the sale of any of the Real Property Assets (including the Listed Real Property) pursuant to the Plan. Prior to distribution of Cash proceeds from any sale of the Debtor's Real Property, the Reorganized Debtor is authorized to first pay reasonable and customary broker / agent fees.

(d)    Mortgage Payoffs., the Reorganized Debtor shall pay the Allowed amount of the Class 4D Claim i) in full from Cash proceeds from the sale of Real Property Assets, to which such Entity's Lien attaches; or (ii) beginning on the first day of the full month following the expiration of the Sale Period, the Reorganized Debtor shall make interest-only payments at the rate of 5.5% per annum to the Entity holding an Allowed Class 4D Claim for a period of 36 months. In month 37, the Claim shall reamortize for a 30-year period, at an interest rate of the Prime Rate + 2%, to be paid monthly, with a final balloon payment due at the end of year 7 of the 30-year term for the remaining balance owed under the Claim.

(e)    _Impairment and Voting_.  Class 4D is Impaired, and the Holder thereof is entitled to vote on the Plan.

### H.  **Class 4E—Jet Lending LLC.**

(a)    _Classification_.  Class 4E consists of Jet Lending LLC.

(b)    _Treatment_.  Except to the extent previously paid in full or unless otherwise agreed to by a Holder of an Allowed Class 4E Claim, subject to Section XIII.Sale of Real Property.

(c)    Pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1146(a), during the Sale Period the Reorganized Debtor will continue to market the Listed Real Property in order to consummate the sale of the Listed Real Property. Additionally, at any time after the Effective Date but prior to

36

the closing of this Chapter 11 Case, the Reorganized Debtor may market and sell any of the Real Property Assets. The Reorganized Debtor will distribute Cash proceeds from the sale of any of the Real Property Assets (including the Listed Real Property) pursuant to the Plan. Prior to distribution of Cash proceeds from any sale of the Debtor's Real Property, the Reorganized Debtor is authorized to first pay reasonable and customary broker / agent fees.

(d)      Mortgage Payoffs., unless otherwise agreed to by a Holder of an Allowed Class 4E Claim, the Reorganized Debtor shall pay the Allowed amount of the Class 4E Claim i) in full from Cash proceeds from the sale of Real Property Assets, to which such Entity's Lien attaches; or (ii) beginning on the first day of the full month following the expiration of the Sale Period, the Reorganized Debtor shall make interest-only payments at the rate of 5.5% per annum to the Entity holding an Allowed Class 4E Claim for a period of 36 months. In month 37, the Claim shall reamortize for a 30-year period, at an interest rate of the Prime Rate + 2%, to be paid monthly, with a final balloon payment due at the end of year 7 of the 30-year term for the remaining balance owed under the Claim.

(e)      <u>Impairment and Voting</u>.  Class 4E is Impaired, and the Holder thereof is entitled to vote on the Plan.

**I.     Class 4F— Metropolitan Life Insurance Company.**

(a)      <u>Classification</u>.  Class 4F consists of Metropolitan Life Insurance Company.

(b)      <u>Treatment</u>.  Except to the extent previously paid in full or unless otherwise agreed to by a Holder of an Allowed Class 4F Claim, subject to Section XIII.Sale of Real Property.

(c)      Pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1146(a), during the Sale Period the Reorganized Debtor will continue to market the Listed Real Property in order to consummate the sale of the Listed Real Property. Additionally, at any time after the Effective Date but prior to the closing of this Chapter 11 Case, the Reorganized Debtor may market and sell any of the Real Property Assets. The Reorganized Debtor will distribute Cash proceeds from the sale of any of the Real Property Assets (including the Listed Real Property) pursuant to the Plan. Prior to distribution of Cash proceeds from any sale of the Debtor's Real Property, the Reorganized Debtor is authorized to first pay reasonable and customary broker / agent fees.

(d)      Mortgage Payoffs., unless otherwise agreed to by a Holder of an Allowed Class 4F Claim, the Reorganized Debtor shall pay the Allowed amount of the Class 4F Claim i) in full from Cash proceeds from the sale of Real Property Assets, to which such Entity's Lien attaches; or (ii) beginning on the first day of the full month following the expiration of the Sale Period, the Reorganized Debtor shall make interest-only payments at the rate of 5.5% per annum to the Entity holding an Allowed Class 4F Claim for a period of 36 months. In month 37, the Claim shall reamortize for a 30-year period, at an interest rate of the Prime Rate + 2%, to be paid monthly, with a final balloon payment due at the end of year 7 of the 30-year term for the remaining balance owed under the Claim.

(e)      <u>Impairment and Voting</u>.  Class 4F is Impaired, and the Holder thereof is entitled to vote on the Plan.

**J.  Class 5—General Unsecured Claims.**

(a)    <u>Classification</u>.  Class 5 consists of all General Unsecured Claims.

(b)    <u>Treatment</u>.  Unless otherwise agreed to by a Holder of an Allowed General Unsecured Claim, each such Entity shall receive, in full satisfaction of its claim, i) its *pro rata* share of any Cash proceeds from the sale of Real Property Assets after satisfying in full all Allowed Administrative Claims and all Allowed Claims in Classes 1 – 4F; or ii) its *pro rata* share of the GUC Recovery Cash. General Unsecured Claims are subject to all statutory, equitable, and contractual subordination claims, rights, and grounds available to the Debtor, the Estate, and pursuant to the Plan, which subordination claims, rights, and grounds are fully enforceable prior to, on, and after the Effective Date.

(c)    <u>Impairment and Voting</u>.  Class 5 is Impaired and the Holders thereof are entitled to vote on the Plan.

**K.  Class 6—Interests.**

(a)    <u>Classification</u>.  Class 6 consists of all Interests.

(b)    <u>Treatment</u>.  There shall be no Distribution on account of Class 6 Interests. Upon the Effective Date, all Interests will be deemed cancelled and will cease to exist.

(c)    <u>Impairment and Voting</u>.  Holders of Interests are deemed to have rejected the Plan and are not entitled to vote.

### SECTION X.
### DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS

**A.  Distribution Dates.**

The Reorganized Debtor shall make Distributions to Holders of Claims.  Subject to the terms of the Plan, the Reorganized Debtor may, in its sole discretion, make a full or partial Pro Rata Distribution to the Holders of Claims on the Initial Distribution Date or a Subsequent Distribution Date.

**B.  Subsequent Distributions.**

Any Distribution not made on the Initial Distribution Date or a Subsequent Distribution Date because the Claim relating to such Distribution had not been Allowed on that Distribution Date shall be held by the Reorganized Debtor for Distribution on any Subsequent Distribution Date after such Claim is Allowed.  No interest shall accrue or be paid on the unpaid amount of any Distribution.

**C.  Distribution Record Date.**

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record

Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date. The Reorganized Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any Distribution with respect to any Claim, the Reorganized Debtor shall be entitled to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to the Reorganized Debtor as of the Distribution Record Date.

### D. Time Bar to Cash Payments by Check.

Distribution checks issued to Creditors shall be null and void if not negotiated within **ninety (90) days** after the date of issuance thereof. The Reorganized Debtor shall not reissue any check except upon directly receiving a request in writing from the Creditor that was originally issued such check within **one-hundred and eighty (180) days** of the disbursement of the Distribution. If the 180-day period elapses without the Creditor requesting the check be reissued, the unresponsive holder's Distribution shall be deemed unclaimed property as provided in the Plan. The foregoing notwithstanding, **ninety (90) days** after the final Distribution under section 1194 of the Bankruptcy Code, the Reorganized Debtor shall stop payment on any check remaining unpaid, the corresponding Distribution shall be deemed unclaimed property, and all unclaimed property shall be redistributed in accordance with the provisions of the Plan.

### E. Tax Identification Numbers.

All Creditors must furnish its taxpayer identification number as assigned by the Internal Revenue Service by submitting a Form W-8, Form W-9, or other form completed in writing to the Reorganized Debtor, and Distribution to each Creditor is hereby conditioned upon receipt of such completed form. If the Creditor fails to provide the taxpayer information, then the unresponsive Creditor's Distribution shall be irreversibly deemed Unclaimed Property and redistributed to the other Creditors in accordance with the provisions of the Plan.

### F. Claims Paid or Payable by Third Parties.

#### a. Claims Paid by Third Parties

The Reorganized Debtor shall reduce a Claim, and such Claim (or portion thereof) shall be Disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not the Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and also receives payment from a party that is not the Reorganized Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Reorganized Debtor, as applicable, annualized

interest at the interest rate provided under 28 U.S.C. § 1961(a), calculated as of the Petition Date, on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

### b.  Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim against the Debtor, then immediately upon such insurer's agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Court.

If an applicable insurance policy has or is subject to a SIR or deductible, the Holder of an Allowed Claim that is payable pursuant to such insurance policy shall, upon written approval of the Reorganized Debtor, have an Allowed Unsecured Claim against the Debtor's Estate up to the amount of the SIR or deductible that may be established upon the liquidation of the Claim, and such Holder's recovery shall be solely in the form of its distribution on account of such Allowed Unsecured Claim under the Plan. Such SIR or deductible shall be considered satisfied in full pursuant to the Plan through allowance of the Unsecured Claim solely in the amount of the applicable SIR or deductible, if any; provided however that nothing herein obligates the Reorganized Debtor to actually disburse proceeds to satisfy any SIR or deducible in full under any insurance policy.

Any recovery on account of the Claim in excess of the SIR or deductible established upon the liquidation of the Claim shall be recovered solely from the Debtor's insurance, if any, and only to the extent of available insurance and any proceeds thereof. If an applicable insurance policy has a retrospective premium retention or a deductible, the Holder of an Allowed Claim that is payable pursuant to such insurance policy shall have a Claim that can be recovered solely from the Debtor's insurance, if any, and only to the extent of available insurance and any proceeds thereof.

For the avoidance of doubt: (a) nothing in this Plan shall be construed to limit, extinguish, or diminish the insurance coverage that may exist or shall be construed as a finding that liquidates any Claim payable pursuant to an insurance policy; and (b) nothing herein relieves any obligation to timely file a Proof of Claim by the applicable Claims Bar Date.

### SECTION XI.
### PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND REDISTRIBUTIONS

### A.  No Distributions Pending Allowance.

Notwithstanding any other provision of the Plan, the Reorganized Debtor shall not distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed.  Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim.

### B.  Resolution of Disputed Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, subject to the Plan, the Reorganized Debtor shall have the right to make, file, prosecute, settle, withdraw, or resolve objections to Claims.  From and after the Confirmation Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent the Reorganized Debtor and the Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Interest without approval of the Bankruptcy Court.

Fed. R. Bank. P. 7068 applies to all Claims objections, regardless of whether any objection has been filed.

### C.  Estimation of Claims.

At any time, (a) prior to the Effective Date, the Debtor, and (b) after the Effective Date, the Reorganized Debtor may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during Litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtor, or the Reorganized Debtor may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdraw, or resolved by any mechanism of the Bankruptcy Court.

### D.  *De minimis* Distributions, Rounding.

Notwithstanding anything herein to the contrary, the Reorganized Debtor shall not be required to make: (i) partial Distributions or payments of fractions of dollars or (ii) a Distribution if the amount to be distributed is or has an economic value of less than one hundred dollars ($100). Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent Distributions.

### E.  Unclaimed and Undeliverable Distributions.

If any Distribution to a Creditor is returned as undeliverable or is unclaimed, no further Distributions to such Creditor shall be made unless and until the Creditor claims the missed Distribution by timely notifying the Reorganized Debtor in writing of its current address along with any other information necessary to make the Distribution to the Creditor in accordance with this Plan, relevant documents, and applicable law. If the Creditor provides the Reorganized Debtor with its current address and such other information necessary to make the Distribution within **one-hundred and eighty (180) days** of the original disbursement, the missed Distribution shall be

made to the Creditor as soon as is practicable, without interest. However, if any Distribution that is undeliverable or otherwise unclaimed is not claimed within **one-hundred-and-eighty (180) days** of the original disbursement, such Distribution shall be deemed "unclaimed property" under Bankruptcy Code section 347(b) and forfeited, and the forfeiter shall consequentially lose his status as a Creditor of the Reorganized Debtor, as applicable. After the 180-day period to claim property has elapsed, the unclaimed property or interests in property shall revert to the Reorganized Debtor for redistribution to Creditors or other disposition in accordance with the terms of the Plan; the Claim to such unclaimed property or interest in property shall be forever barred, expunged, and deemed Disallowed; and the holder of said claim deemed Disallowed shall be enjoined from receiving any Distributions under this Agreement and from asserting such Disallowed Claim against the Reorganized Debtor.

The Reorganized Debtor may attempt to determine a Creditor's current address or otherwise locate a Creditor, but nothing in this Plan shall require the Reorganized Debtor to do so.

## SECTION XII.
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

### A.  Assumption and Rejection of Executory Contracts and Unexpired Leases.

Except with respect to: (i) executory contracts or unexpired leases that were previously assumed or rejected by order of the Bankruptcy Court, (ii) executory contracts or unexpired leases that are on the Schedule of Assumed Contracts, if any, attached to the Plan Supplement, and (iii) executory contracts or unexpired leases that are the subject of a pending motion to assume or reject, pursuant to Section 365 of the Bankruptcy Code, on the Effective Date, each executory contract and unexpired lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed assumed as of the Effective Date pursuant to Section 365 of the Bankruptcy Code. Nothing in this Section shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date.  The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases, and neither the Debtor nor the Reorganized Debtor shall bear any liability for costs associated with such matters.

Entry of the Confirmation Order by the Bankruptcy Court shall, subject to and upon the occurrence of the Effective Date, constitute a Final Order approving the assumptions, assumptions and assignments, and rejections, as applicable, of the Debtor's executory contracts and unexpired leases.

### B.  Rejection Claims.

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be filed with the Claims Agent within thirty (30) days after the earlier of the Effective Date or an order of the Bankruptcy

Court approving such rejection. Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan that is not filed within such times will be subject to objection. All such Claims for which Proofs of Claim are timely and properly filed and ultimately Allowed will be treated as Unsecured Claims.

### C.  Insurance Policies.

Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations of the Insurance Policies. To the extent one or more of the Insurance Policies provide potential coverage related to one or more Causes of Action the Debtor holds or may hold against any Entity, the Debtor shall, to the extent permissible under each Insurance Policy, assign all rights thereunder with respect to such Causes of Action to the Reorganized Debtor. All net proceeds (including, for the avoidance of doubt, net of any deductibles or retentions) of Insurance Policies received by the Reorganized Debtor shall be treated as proceeds of such Causes of Action for all purposes under the Plan. The Debtor shall take no action to or otherwise impair the Insurance Policies. Nothing herein shall diminish or impair the enforceability of the Insurance Policies and related agreements that may cover Claims and Causes of Action against the Debtor or any other Entity.

## SECTION XIII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.  Sources of Consideration for Plan Distributions.

Distributions to Holders of Allowed Claims, pursuant to this Plan, shall be made from 1) Cash proceeds of the sale of any Real Property Assets; 3) Available Cash; and 4) the Reorganized Debtor's future revenue.

### B.  Sale of Real Property.

Pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1146(a), during the Sale Period the Reorganized Debtor will continue to market the Listed Real Property in order to consummate the sale of the Listed Real Property. Additionally, at any time after the Effective Date but prior to the closing of this Chapter 11 Case, the Reorganized Debtor may market and sell any of the Real Property Assets. The Reorganized Debtor will distribute Cash proceeds from the sale of any of the Real Property Assets (including the Listed Real Property) pursuant to the Plan. Prior to distribution of Cash proceeds from any sale of the Debtor's Real Property, the Reorganized Debtor is authorized to first pay reasonable and customary broker / agent fees.

### C.  Mortgage Payoffs.

In order to receive payment under this Plan, not later than 30 days of the Effective Date, all Entities asserting mortgage Liens on any of the Debtor's real property must deliver a payoff statement to the Debtor detailing the amount required to pay off the underlying Claim.

The Debtor or Reorganized Debtor, as applicable, will have 30 days to file an objection with the Bankruptcy Court in order to determine the Allowed Claim Amount under the Plan.

### D. **Corporate Action by Debtor.**

On the Effective Date and automatically and without further action, all matters provided under this Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order shall act as an order modifying the Debtor's organizational documents and operating agreements such that the provisions of this Plan can be effectuated.

### E. **Preservation of Causes of Action.**

The non-disclosure of any particular Claim, Cause of Action, or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, or claim for relief.

The Reorganized Debtor specifically reserves and retains any and all claims and rights against any and all third parties not otherwise released herein, whether such claims and rights arose before, on, or after the Petition Date, the Confirmation Date, the Effective Date, or any Distribution Date, including, without limitation, any and all Causes of Action or claims for relief that the Debtor or its Estate, or the Reorganized Debtor may have against (i) any insurer or insurance policies in which the Debtor or its current or former personnel have an insurable or other interest in or right to make a claim against, any of the Debtor's insurers; (ii) any recipient of an Avoidance Action, whether or not identified on the Debtor's statement of financial Affairs, including any amendments thereto; (iii) any and all claims and Causes of Action against any party asserting a pre-Petition Date mortgage lien against the Real Property Assets; (iv) all Litigation currently pending where the Debtor is the plaintiff, including case no. 25-cv-0745, *3910 Enterprises, Inc. v. Pacific RBLF Funding Trust, et al.*, pending in the 405th Judicial District Court in Galveston County, Texas; and (v) on the Effective Date, pursuant to 11 U.S.C. § 1123(b)(3)(B), as of the Effective Date any Causes of Action that are already pending or that are property of the estate of the Debtor, even if not yet filed, including, without limitation all common law tort, statutory tort, statutory claims and contract claims and claims for equitable relief of all kinds and avoidance or recovery actions under 11 U.S.C. § 544, 545, 547, 548, 549, 550, 551 and 553, that are not released as a part of this Plan, shall become property of the Reorganized Debtor.

### SECTION XIV.
### EFFECT OF CONFIRMATION

### A. **Binding Effect of the Plan.**

The provisions of the confirmed Plan shall bind the Debtor, the Reorganized Debtor, any Entity acquiring property under the Plan, and any Creditor or Interest Holder, whether or not such Creditor or Interest Holder has filed a Proof of Claim or Interest in the Chapter 11 Case, whether or not the Claim of such Creditor or the Interest of such Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan. All Claims and Debts shall be fixed and adjusted pursuant to the Plan. The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under the Plan or related to any transaction contemplated

44

under the Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code Section 1146(a).

### B. Discharge of Claims and Termination of Interests.

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtor or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

### C. Property Free and Clear.

Except as otherwise provided in the Plan or the Confirmation Order, all property that shall vest in the Reorganized Debtor, as applicable, shall be free and clear of all Claims, Interests, Liens, charges, or other encumbrances of Creditors or Interest Holders, other than as set forth herein. Following the Effective Date, the Reorganized Debtor, may transfer and dispose of any such property, free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order. For the avoidance of doubt, all property shall vest in the Reorganized Debtor free and clear, pursuant to this paragraph, regardless of whether any lien was asserted pre- or post-petition.

### D. Guarantees and Joint Obligations.

The classification and manner of satisfying all claims under this plan takes into consideration: (a) the existence of guarantees by the Debtor of obligations of other persons and of third parties of debts of the Debtor, (b) the fact that the Debtor may be a joint obligor with another person or persons with respect to the same obligation, and (c) any contention by holders of Claims that the Claims of other holders are subordinated by contract or otherwise to their Claims. All Claims against the Debtor are based upon the express requirement and terms of this Plan that any such guarantees, subordination claims or joint obligations shall be discharged in the manner

45

provided in this Plan, and which holder of such Claims shall be entitled to only one distribution with respect to any obligation of the Debtor.  All Claims against the Debtor, and all rights and claims between or among holders of Claims relating in any manner whatsoever to Claims against the Debtor, based upon any claimed subordination rights or rights to avoid payments or transfers of property pursuant to any provision of the Bankruptcy Code or other applicable law, shall be deemed satisfied by the distributions under this Plan to holders of Allowed Claims hereunder and shall not be subject to levy, garnishment, attachment, or like legal process by any holder of a Claim by reason of any claim subordination rights or otherwise, except as otherwise provided herein, so that each holder of a Claim shall have and receive the benefits of the distributions in the manner set forth in this Plan.

### E. Gatekeeper Provision.

No party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a claim or cause of action of any kind against any of the Released Parties that arose or arises from or is related to the claim or cause of action without first (i) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such claim or cause of action represents a colorable claim against a Released Party and is not a claim that the Debtor released under the Plan, which request must attach the complaint or petition proposed to be filed by the requesting party and (ii) obtaining from the Bankruptcy Court specific authorization for such party to bring such claim or cause of action against any such Released Party. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claims or causes of action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable claim or cause of action.

### SECTION XV.
### SETTLEMENT, RELEASE, AND INJUNCTION

### A. Compromise and Settlement of Claims, Interests, and Controversies.

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Effective Dae, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtor or its Estate,. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Estate and holders of Claims and Interests and is fair, equitable, and reasonable.

## B. <u>Release.</u>

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtor, the Reorganized Debtor, and the Estate (collectively, the "<u>Debtor/Estate Releasors</u>") shall release (the "<u>Debtor/Estate Release</u>") each Released Party, and each Released Party is deemed released by the Debtor/Estate Releasors from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor/Estate Releasors, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor/Estate Releasors would have been legally entitled to assert in its own right, or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's reorganization, the Chapter 11 Case, the purchase, sale, transfer of any security, asset, right, or interest of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence; *provided however*, the foregoing Debtor/Estate Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor/Estate Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtor and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Debtor/Estate Releasors asserting any Claim or Cause of Action released pursuant to the Debtor/Estate Release.

## C. <u>Injunction.</u>

In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold, or may hold Claims against or Interests in the Debtor, the Reorganized Debtor, or the Estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor, the Reorganized Debtor, or the Estate with

respect to any such Claim or Interest; **(b)** the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the Reorganized Debtor, or the Estate with respect to any such Claim or Interest; **(c)** creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtor, the Reorganized Debtor, or the Estate with respect to any such Claim or Interest; and **(d)** any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this Section shall prohibit the Holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtor or the Reorganized Debtor under the Plan.

## SECTION XVI.
## CONDITIONS PRECEDENT TO EFFECTIVE DATE

### A.  Conditions to the Effective Date.

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtor: (i) a Confirmation Order in form and substance reasonably acceptable to the Debtor shall have been entered by the Bankruptcy Court and become a Final Order which is not subject to any stay of effectiveness; (ii) there shall not be in effect on the Effective Date any Order staying the Confirmation Order; (iii) all actions, documents, certificates, or agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws.

### B.  Waiver of Conditions Precedent.

To the fullest extent permitted by law, the conditions to the Effective Date set forth above may be waived or modified in whole or in part at any time in writing by the Debtor without leave from or an order of the Court.

## SECTION XVII.
## RETENTION OF JURISDICTION

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

(a)    To hear and determine any and all objections to the allowance of a Claim, proceedings to estimate a Claim for any purpose, actions to equitably subordinate a Claim, proceedings seeking approval of any necessary claims reconciliation protocols, or any controversy as to the classification of a Claim in a particular Class under the Plan;

(b)    To administer the Plan;

(c)    To estimate or liquidate any Disputed Claims;

(d)     To hear and determine objections to mortgage payoffs, pursuant to Section XIII.B;

(e)     To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date or otherwise relating to, arising from, or in connection with Litigation; *provided however*, that the Reorganized Debtor shall reserve the right to commence actions in all appropriate jurisdictions;

(f)     To hear and determine any and all motions and/or objections to fix, estimate, allow and/or disallow any Claims arising therefrom;

(g)     To hear and determine any and all applications by Professionals for an award of on account of any Professional Fee Claims;

(h)     To enable the Reorganized Debtor to commence and prosecute any Litigation which may be brought after the Effective Date;

(i)     To hear and determine on a final basis any disputes or litigation arising out of the claims or Causes of Action specified in Section XIII.J;

(j)     To interpret or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document, or instrument contemplated by the Plan;

(k)     To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

(l)     To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(m)     To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code;

(n)     To enter any orders as required by Rule 23 of the Federal Rules of Civil Procedure, to the extent made applicable to any adversary proceeding pursuant or contested matter pursuant to Bankruptcy Rules 7023 and 9014(c), as applicable; and

(o)     To close the Chapter 11 Case when the administration of the Chapter 11 Case has been completed.

## SECTION XVIII.
## MISCELLANEOUS PROVISIONS

### A.  Payment of Statutory Fees / Closing of Chapter 11 Case.

All fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid on the Effective Date, or as soon as practicable thereafter, by the Debtor or Reorganized Debtor.  Quarterly fees owed to the U.S. Trustee shall be paid when due in accordance with applicable law and the Reorganized Debtor shall continue to file reports to show the calculation of such fees based on distributions made by the Reorganized Debtor until the Chapter 11 Case is closed under section 350 of the Bankruptcy Code or the Reorganized Debtor is deemed dissolved pursuant to the terms hereof.

### B.  Withdrawal of Plan.

The Debtor reserves the right to revoke and withdraw the Combined Plan and Disclosure Statement at any time on or before the Confirmation Date.  If the Debtor revokes or withdraws the Combined Plan and Disclosure Statement, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor.

### C.  Severability of Plan Provisions.

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### D.  Exhibits.

All exhibits attached to the Combined Plan and Disclosure Statement and the Plan Supplement are, by this reference, hereby incorporated herein.  The Debtor reserves the right to make non-substantive changes and corrections to such Exhibits in advance of the Confirmation Hearing.  If any Exhibits are changed or corrected, the replacement Exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing.

### E.  Notices.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered 1) via electronic mail *and* 2) by nationally recognized overnight or next-day courier service, first-class mail, electronic mail, or via facsimile with electronic confirmation of receipt as follows:

> Counsel to the Debtor
> Graham PLLC, 4203 Montrose Blvd., Suite 550,
> Houston, Texas 77006,
> ggraham@graham-pllc.com

### F.  Reservation of Rights.

Neither the filing of the Combined Plan and Disclosure Statement nor any statement or provision contained in the Combined Plan and Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall: (a) be or be deemed to be an admission against interest and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in or to any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Combined Plan and Disclosure Statement nor any statement contained in the Combined Plan and Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or without the Chapter 11 Case involving the Debtor, except with respect to Confirmation of the Plan.

### G.  Defects, Omissions and Amendments.

The Debtor may, and with the approval of the Bankruptcy Court and without notice to all Holders of Claims or Interests, insofar as it does not materially and adversely affect Holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the consummation of the Plan.  The Plan may be altered or amended before or after Confirmation as provided in Section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Holders of Claims, so long as the Plan, as modified, complies with Sections 1122 and 1123 of the Bankruptcy Code and the Debtor has complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered or amended before or after the Confirmation Date, but prior to substantial Consummation, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, so long as the Plan, as modified, complies with Bankruptcy Code Sections 1122 and 1123, the Debtor has complied with Bankruptcy Code Section 1125 and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code Section 1129.

### H.  Filing of Additional Documents.

The Debtor shall file with the Bankruptcy Court such agreements, instruments, pleadings, orders, papers, or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**I.**   **Successors and Assigns.**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entity.

**J.**   **Setoffs and Recoupments.**

The Reorganized Debtor may, but shall not be required to, set off against or recoup from the payments to be made pursuant to the Plan in respect of a Claim, any claim of any nature whatsoever that the Debtor or the Reorganized Debtor or its Estate, as applicable, may have against the Holder of such Claim, but neither the failure to do so or the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtor or the Reorganized Debtor or its Estate against such Holder.

**K.**   **Implementation.**

Upon Confirmation, the Debtor shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

**L.**   **Record Date.**

To the extent a "Record Date" is required for implementation of the Plan, the record date shall be the voting record date established by the Bankruptcy Court in the order conditionally approving the Disclosure Statement or such other date as the Bankruptcy Court may set. In the alternative, if no other date is set, the Record Date shall be the date the Court enters the Confirmation Order.

**M.** **Substantial Consummation.**

On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code Sections 1101 and 1127(b).

**N.**   **Waiver of Fourteen-Day Stay.**

The Debtor requests, as part of the Confirmation Order, a waiver from the Bankruptcy Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the 14-day stay of Bankruptcy Rule 6004(g).

**O.** **Governing Law.**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

P.  **Entire Agreement.**

On the Effective Date, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## SECTION XIX.
## RECOMMENDATION

The Debtor strongly recommends that all creditors receiving a Ballot vote in favor of the Plan.  The Debtor believes that the Plan is in the best interests of creditors.  The Plan as structured, among other things, allows creditors with Allowed Claims to participate in distributions believed to be in excess of those that would otherwise be available were the Chapter 11 Case dismissed or converted under Chapter 7 of the Bankruptcy Code and minimizes delays in recoveries to creditors.

**FOR ALL THE REASONS SET FORTH IN THIS DISCLOSURE STATEMENT, THE DEBTOR BELIEVES THAT THE CONFIRMATION AND CONSUMMATION OF THE PLAN IS PREFERABLE TO ALL OTHER ALTERNATIVES.  THE DEBTOR URGES ALL CREDITORS ENTITLED TO VOTE TO ACCEPT THE PLAN AND TO EVIDENCE SUCH ACCEPTANCE BY RETURNING THEIR BALLOTS SO THAT THEY WILL BE RECEIVED ON [●], 2026.**

1/31/2026

Dated: January 31, 2026                    Respectfully submitted,

                                           Debtor,
                                           3910 Enterprises, Inc.


                                           /s/ Rejone Edwards
                                           ID dYa5M2ZTsNcTf8trbW5zSXLP
                                           Rejone Edwards, on behalf of the Debtor